# SUPPLEMENT

### OPINION OF THE JUSTICES TO THE SENATE.

In the opinion of the Justices of this court, rendered at the request of the Senate, provisions of a certain proposed act, creating a privately owned business corporation for the construction and operation of toll bridges or tunnels or both over or under parts of Boston harbor for the accommodation of traffic and for other public purposes, with full powers in the corporation to exercise eminent domain and to make extensive mechanical and engineering constructions wholly at its own discretion except as to general approval of plans by a public board, its costs and expenses to be paid with money derived mainly from the sale of its bonds or other evidences of indebtedness guaranteed by the Commonwealth as to payment both of the interest as it becomes due at each semiannual period and of the principal as it matures at not more than forty years from the date thereof, would be violative of art. 62, § 1, of the Amendments to the Constitution.

The circumstance, that a board of trustees to be appointed by the Governor of the Commonwealth would have the management and operation of the corporation from and after the date of the opening of the bridge and ways for public use, does not affect the applicability of said § 1 to such proposed act.

The provisions of said § 1 require at least that the public management of such an enterprise as is described above shall extend to the construction of such bridges and tunnels and to the expenditure therefor of the proceeds of the bonds in aid of the payment of which the credit of the Commonwealth is given in the manner stated in the bill, as well as to the operation of the enterprise after completion.

On May 25, 1931, the Senate adopted the following order, which was transmitted to the Justices of the Supreme Judicial Court on May 28, 1931:

WHEREAS, There is pending in the Senate a bill entitled "An Act incorporating Boston-South Shore Bridge Company, granting a Franchise to Said Company to construct a Bridge or Bridges and/or a Tunnel or Tunnels with Connecting Ways and Approaches from Boston to Hull and providing for the Public Operation of Said

Company", printed as current Senate document five hundred and twenty-nine; and.

WHEREAS, Grave doubt exists as to the constitutionality of said bill if enacted into law; therefore be it

ORDERED, That the Senate require the opinions of the Honorable the Justices of the Supreme Judicial Court on the following important questions of law: —

1. Are the provisions of section one of Article sixty-two of the amendments to the Constitution of the Commonwealth, forbidding the giving or loaning of the credit of the commonwealth to or in aid of any individual or of any private association or of any corporation which is privately owned and managed applicable to legislation creating a privately owned business corporation for the construction and operation of toll bridges or tunnels or both over or under parts of Boston harbor for the accommodation of traffic and for other public purposes, financed by the issue of bonds in aid of the payment of which the credit of the commonwealth is given in the manner provided in section twenty-three of said bill, under provisions declared in section one of said bill to constitute a contract between the commonwealth and the corporation?

2. If so applicable, are said provisions of the Constitution violated if public management of the enterprise is deferred until said bridges and tunnels are open for travel as provided in said bill?

3. Do the said provisions of the Constitution require that the public management of such an enterprise as is described in question one extend to the construction of such bridges and tunnels and to the expenditure therefor of the proceeds of the bonds in aid of the payment of which the credit of the commonwealth is given in the manner aforesaid, as well as to the operation of the enterprise after completion?

4. Would the giving of the state's credit to such an enterprise as is described in said Senate document five hundred and twenty-nine violate any provision of the Constitution of the Commonwealth?

On June 8, 1931, the Justices returned the following answers:

To The Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in the order adopted by the Honorable Senate on May 25, 1931, and received on May 28, 1931. These questions relate to a pending bill, printed as Senate, No. 529, and entitled "An Act incorporating Boston-South Shore Bridge Company, granting a Franchise to Said Company to construct a Bridge or Bridges and/or a Tunnel or Tunnels with Connecting Ways and Approaches from Boston to Hull and providing for the Public Operation of Said Company." Copy of the order and copy of the bill are hereto annexed.

So far as material to the questions propounded, the provisions of the bill may be briefly summarized. By § 1 a corporation is created for the purposes stated in the title of the act. The total number of shares of its capital stock is one thousand, all of one class without par value, to be issued for a consideration to be fixed by the board of directors. "The duration of the company shall be unlimited." (See art. 59 of Amendments to Constitution.) The provisions of the act are declared to constitute a contract between the Commonwealth and the corporation. By other sections extensive powers are conferred upon the corporation to acquire in its own name lands and rights by eminent domain or otherwise and to construct by itself or by contract with others all structures necessary for the completion and the opening to public use of the bridges, tunnels and connecting approaches. The power to determine whether the purposes of the act shall be carried out by the construction of a bridge or bridges or by means of a tunnel or tunnels is vested in the directors of the corporation. General plans for bridges and ways must be approved by the department of public works. In order to provide funds for the construction of the bridges and ways, for the ac-

quisition of lands and rights necessary or convenient there-
for and for expenses of the corporation during such con-
struction, the corporation is empowered by § 10 to issue
by its board of directors its obligations to an amount not
exceeding $25,000,000, to mature not more than forty years
from their dates and be retired at maturity through the
operation of a sinking fund, to be sold at not less than a
stated minimum price, and to bear interest at not more
than a specified maximum rate. Subject to provisions as
to approval of plans and certification of safety of the bridges
and ways when completed by the department of public
works, the entire management of the corporation and the
construction of its works are vested in the corporation up
to the date of the opening of the bridges and ways for pub-
lic use. It is provided that on and after that date a board
of five trustees appointed by the Governor shall, in behalf
of the Commonwealth, manage and operate the corporation
and take and hold possession of its property until its out-
standing indebtedness incurred pursuant to § 10 shall be
paid or funds adequate for such payment be provided.
Among the powers conferred upon the trustees is the power
of fixing rates of toll to be paid by those who use the bridges
and ways of the corporation. Provision is made by § 23
that, if in any year the income of the corporation is insuf-
ficient to meet the cost of service as defined in § 18, which
among other items includes "interest on, and sinking funds
with respect to, all indebtedness" of the corporation, thus
embracing the $25,000,000 bond issue under § 10, it shall
be the duty of the Treasurer and Receiver General, upon
notification from the trustees of such insufficiency, to pay
over to the corporation the amount required to meet such
insufficiency, and pending such payment to borrow on
behalf of the Commonwealth money necessary to meet all
required payments promptly.

It is assumed without discussion that construction and
operation of the bridges or tunnels and ways authorized by
the bill are a public purpose, designed to promote the gen-
eral welfare. The corporation is to be organized to exer-

cise a public franchise of importance for the benefit of all people who choose to use it upon the terms to be established. In brief, the bill creates a private corporation to undertake a work designed for the service of the public with full powers to exercise eminent domain and to make extensive mechanical and engineering constructions wholly at its own discretion except as to general approval of plans by a public board, its costs and expenses to be paid with money derived mainly from the sale of its bonds or other evidences of indebtedness guaranteed by the Commonwealth as to payment both of the interest as it becomes due at each semiannual period and of the principal as it matures at not more than forty years from the date thereof.

Certain matters are apparent from this summary of the bill. A business corporation is created. No public instrumentalities or governmental unit or subdivisions are made stockholders. The stock is to be issued upon terms and to persons to be determined by the directors. The owners of such a corporation are its stockholders. The corporation is privately owned. Its entire control and administration during the period of organization and construction and until a time beginning "from and after the date of opening of the bridges and ways for public use" are vested in the officers of the corporation. Its management is private. It is clear that by this bill the credit of the Commonwealth is given or loaned in aid of a corporation which is privately owned and managed. Scarcely anything can be a more direct giving or loaning of credit than the guaranty of the payment of principal and interest upon obligations of another as they fall due.

The words of § 1 of art. 62 of the Amendments to the Constitution are: "The credit of the commonwealth shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed."

It is obvious that the explicit prohibition of this section would be violated by the proposed bill. Nothing more than the bald summary of its provisions already made is

needed to demonstrate their incompatibility with the terms of the constitutional mandate just quoted.

We answer "Yes" to the first question.

The circumstance that a board of trustees to be appointed by the Governor of the Commonwealth is to have the management and operation of the corporation from and after the date of the opening of the bridge and ways for public use does not affect the applicability of § 1 of art. 62 of the Amendments to the Constitution to the bill. The credit of the Commonwealth is given or loaned the moment the bill takes effect. That credit as matter of common knowledge cannot fail to be an influential, favorable factor in the sale of the obligations of the corporation whenever issued. The faith of the Commonwealth in truth and effect is pledged to the ultimate payment of those obligations as to both principal and interest when the bill takes effect and while the corporation continues to be privately owned, managed and operated. The provision as to deferred public management of the enterprise does not dull the edge of the constitutional command against lending the credit of the Commonwealth to such a corporation.

The provisions of the proposed bill find no support in *Opinion of the Justices*, 261 Mass. 523, 541–544; 261 Mass. 556, 601–602, touching certain questions concerning proposed bills as to the Boston Elevated Railway Company. The questions there answered were confined to the issuance of securities or the guaranty of securities to be issued and their proceeds expended by public trustees while in control and management of that company. What was there said has no relevancy to the provisions of the proposed bill.

We answer "Yes" to the second question.

We answer to question three that the provisions of § 1 of art. 62 of the Amendments to the Constitution require at least that the public management of such an enterprise as is described in question one shall extend to the construction of such bridges and tunnels and to the expenditure therefor of the proceeds of the bonds in aid of the payment of which the credit of the Commonwealth is given in the manner stated in the bill, as well as to the operation of the enter-

prise after completion. It is not within the scope of the question and we could not undertake to discuss how, if at all, the bill might be changed in order to avoid the constitutional difficulties it now encounters.

In view of the answers already given, it becomes unnecessary to consider question four.

<div align="right">

ARTHUR P. RUGG.
JOHN C. CROSBY.
EDWARD P. PIERCE.
JAMES B. CARROLL.
WILLIAM C. WAIT.
GEORGE A. SANDERSON.
FRED T. FIELD.