# SUPPLEMENT.

OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTA-
TIVES.

*Constitutional Law*, Housing, Veteran, Public purpose, Giving or lending
the credit of the Commonwealth, Borrowing by the Commonwealth.
*Housing. Veteran.*

Apart from art. 62 of the Amendments to the Constitution of the Com-
monwealth, the furnishing by it of financial assistance, reasonably
limited in time and amount, to housing authorities in alleviating an
existing shortage of housing available to veterans through low rent
housing projects exclusively for veterans and certain dependents of
veterans, with certain priorities among veterans, and without any
requirement for the elimination of existing unsafe or unsanitary dwell-
ing units by the construction of such veterans' housing, would be for
a public purpose as in recognition of military service and would be
constitutional.

A guaranty by the Commonwealth of bonds or notes issued by housing
authorities for the purpose of providing housing for veterans, and
annual contributions by the Commonwealth to housing authorities of
money to be used for the payment of principal and interest of such
bonds or notes, would involve a loaning of the credit of the Common-
wealth only to publicly owned and managed corporations and there-
fore would not be in contravention of § 1 of art. 62 of the Amendments
to the Constitution of the Commonwealth; and such guaranty and
contributions would not constitute a borrowing of money by the Com-
monwealth within § 3 of art. 62.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully
submit these answers to the questions set forth in an order
adopted by the House of Representatives on March 9, 1948,
and transmitted to the Justices on March 12, 1948. A
copy of the order is hereto annexed. The questions sub-
mitted relate to a bill now pending before the House of
Representatives (House, No. 1902) entitled "An Act to
provide financial assistance by the commonwealth to

housing authorities in order to alleviate the housing shortage for veterans."

The order contains recitals, in substance, that there still exists an acute shortage of housing available for rent by veterans, and that dwellings otherwise so available are so expensive as to be beyond the financial reach of many veterans in need of housing. The questions of law upon which the opinions of the Justices are required are these:

"(1) Is it within the power of the General Court to provide that the commonwealth, acting by and through the state board of housing, may enter into a contract or contracts with a housing authority for state financial assistance in the form of guarantees by the commonwealth of notes and/or bonds of the housing authority issued to finance the cost of a housing project or projects, and annual contributions by the commonwealth, the said projects to be rented to war veterans with priority to veterans of low income of World War II, as authorized by sections 26NN and 26OO of chapter 121 of the General Laws, if amended as provided in section 3 of said House, No. 1902?

"(2) Is it within the power of the General Court under Part II, c. 1, section 1, article 4 of the constitution of the commonwealth and Article XLVII of the amendments thereto, or any other provisions of the constitution, to authorize the commonwealth to guarantee notes and/or bonds of a housing authority issued to finance the cost of housing projects for war veterans and to make annual contributions to be used for the payment of interest on, and principal of, notes and/or bonds of such housing authority in order to reduce the rent otherwise required, substantially as provided in said sections 26NN and 26OO, if amended as provided in section 3 of said House, No. 1902?

"(3) Do any of the provisions of said bill with reference to guarantees by the commonwealth of notes and/or bonds of housing authorities and the payment of annual contributions, as authorized by said sections 26NN and 26OO, if amended as provided in section 3 of said House, No. 1902, come within section 3 of Article LXII of the amendments to the constitution?

"(4) Is any provision of said bill inconsistent with said Article LXII?"

The proposed act would make certain changes in the housing authority law which in its present form is contained in G. L. (Ter. Ed.) c. 121, §§ 26I to 26NN, inclusive, as appearing in St. 1946, c. 574, § 1, as amended in § 26KK by St. 1947, c. 486. See St. 1948, c. 51. The proposed act begins with a recital that "An acute shortage of housing exists in many of the cities and towns of the commonwealth, and on account of such shortage many veterans are unable to obtain shelter for themselves and their families, and this shortage is likely to continue for a substantial period of time; and inability to obtain adequate shelter will cause suffering and disease among such veterans unless such shortage is relieved, and this condition has created a public exigency making the provision, as provided by this act, of financial assistance by the commonwealth to housing authorities, in order to alleviate such shortage an immediate public necessity." The act is declared to be an emergency law necessary for the immediate preservation of the public health and convenience.

The crucial provisions of the proposed act are contained in the new sections 26NN and 26OO, as they appear in § 3 of the act. These new sections provide that the Commonwealth acting by and through the State board of housing may contract with a housing authority for "state financial assistance in the form of a guarantee by the commonwealth of notes and/or bonds of the housing authority issued to finance the cost of a housing project or projects, and annual contributions by the commonwealth" (§ 26NN), or for "supplementary state financial assistance in the form of a guarantee by the commonwealth of any loan made by the housing authority to finance that portion of the cost of a housing project or projects not financed with federal assistance, and annual contributions by the commonwealth on that portion of the cost of such project or projects for which no federal contributions are available" (§ 26OO). In either case the project must "be administered for occupancy in accordance with section twenty-six FF, except

that each such project shall be occupied exclusively by veterans and their families and priority shall be given first to veterans of World War II of low income, then to veterans of low income, low income to be determined from time to time by the board." This reference to § 26FF of the existing law and other references in the proposed act would insure that projects developed under it would be operated substantially as low rent housing projects, although limited for the benefit of veterans and their families. It is provided, in substance, that the present § 26GG requiring the elimination of unsafe or unsanitary dwelling units substantially equal in number to the number of newly constructed dwelling units shall not be applicable. It is further provided that the board shall accept no application for State financial assistance under § 26NN or § 26OO after two years from the effective date of § 26NN. There are limitations upon the amounts of notes or bonds and the times during which they may remain outstanding. The annual contributions for any project are limited in amount to two and one half per cent of its cost and are limited in time to the period during which the bonds remain outstanding, and in any event to twenty-five years after completion of the project. Each contract between the Commonwealth and a housing authority must contain a provision that the annual contributions to be paid by the Commonwealth to the housing authority shall be used for the payment of interest on, and principal of, the notes and bonds. The full faith and credit of the Commonwealth are pledged to guarantee the notes and bonds and for the payment of the annual contributions contracted for by the Commonwealth. By an amendment to § 26J the definition of the word "veteran" is altered so as to include not only a man or woman who served at least ninety consecutive days during time of war or insurrection in the armed forces of the United States and has been separated therefrom under conditions other than dishonorable but also "the widow, mother or other dependent of a person who so served and who died while in such service and the wife, mother or other dependent of a person who is still so serving."

In *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288, this court held that the housing authority law, then G. L. (Ter. Ed.) c. 121, §§ 26I to 26II, inclusive, as inserted by St. 1938, c. 484, § 1, providing for the elimination of slums and unsafe and unsanitary dwellings by means of the provision through public funds of low rent housing as therein set forth, involved the expenditure of public moneys for a public purpose and was valid under art. 4, § 1, c. 1 of Part II of the Constitution. In that case in summing up the result of previous decisions as to what purposes were public and therefore proper objects of governmental expenditure and what purposes were private and therefore improper objects to which to devote money belonging to all of the people this court said, "At any rate it is plain that an expenditure is not necessarily barred because individuals as such may profit, nor is it necessarily valid because of incidental benefit to the public." 304 Mass. at pages 292–293. See also *Stockus* v. *Boston Housing Authority*, 304 Mass. 507, 508. In *Opinion of the Justices*, 320 Mass. 773, the Justices gave their opinion that an act containing recitals of a shortage of available housing and of its consequences similar to the recitals in the presently proposed act and authorizing cities and towns to enter into contracts and expend money raised by taxation to provide temporary housing for "distressed" veterans of World War II and their families in a time of shortage and when because of war service it was particularly difficult for veterans and their families to secure housing, involved the expenditure of public money for a public purpose in recognition of the military services rendered, and was valid. That opinion contains a citation of the authorities supporting the validity of expenditures of public money in recognition of military services. It is unnecessary to repeat here the reasoning or the citations there set forth. We see nothing in the provisions for priority among veterans, or in the inclusion in the term "veteran" of the widow, wife, mother, or other dependent of a person who served or is serving, which goes beyond reasonable adaptation of the means to the end sought. It does not seem to us that the contemplated

expenditures for the benefit of veterans and their families reach in time or amount beyond what the Legislature may reasonably consider proper in the existing circumstances. We are not now called upon to define the outer limits to which recognition of military services by the expenditure of public moneys for the benefit of veterans and their families may extend. We see nothing in the failure to provide in the proposed act for the elimination of unsafe and unsanitary dwelling units that can affect the validity of the act. The single object of serving the higher interests of the State through the relief of veterans and their families places this act upon a footing different from that upon which the present housing authority law stands. We are therefore of opinion that, apart from the limitations imposed by art. 62 of the Amendments to the Constitution upon the loaning of credit and the borrowing of money by the Commonwealth, the expenditure of public moneys under the proposed act would be for a public purpose and would be constitutional within the principle on which rests the *Opinion of the Justices*, 320 Mass. 773.

But the provisions of the proposed act by which the Commonwealth is to guarantee the notes, bonds or loans of housing authorities and to contract with housing authorities to make annual contributions to them to be used by them for the payment of interest on, and principal of, these obligations present the question of possible conflict with art. 62 of the Amendments to the Constitution. Section 1 of that article provides that "The credit of the commonwealth shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed." The remaining sections deal with the borrowing of money by the Commonwealth. Section 2 provides that the Commonwealth may borrow money to repel invasion, suppress insurrection, defend the Commonwealth, assist the United States in case of war, and in anticipation of receipts from taxes or other sources. Section 3 reads, "In addition to the loans which may be contracted as before provided, the commonwealth may borrow money only by a vote, taken

by the yeas and nays, of two-thirds of each house of the general court present and voting thereon. The governor shall recommend to the general court the term for which any loan shall be contracted."

In our opinion the proposed guaranty by the Commonwealth of the obligations of housing authorities would be a loaning of the credit of the Commonwealth to the housing authorities. In *Opinion of the Justices*, 276 Mass. 617, at page 621, it is said, "Scarcely anything can be a more direct giving or loaning of credit than the guaranty of the payment of principal and interest upon obligations of another as they fall due." But the housing authorities are not corporations "privately owned and managed." On the contrary, they are publicly owned and managed. We think it cannot be said that the credit of the Commonwealth would "be given or loaned to or in aid of any individual" within the meaning of those words in § 1, although ultimately individuals would benefit. The benefit to individuals would, we think, be a collateral consequence of the loaning of credit to publicly owned and managed corporations to aid them in carrying on an activity the primary purpose of which would be to maintain the strength of the State for the benefit of all its people by rendering military service honorable, avoiding the disgraceful spectacle of veterans, possibly because of their very absence in military service, unable to obtain suitable living accommodations in the community they have aided to defend, and in all those ways which have caused benefits to veterans within reasonable limits to be recognized as a proper object for the expenditure of public funds.

We think that the proposed guaranty would not be a borrowing of money by the Commonwealth within § 3 for the following reasons. The borrowing would be done by the housing authority which would be primarily liable for the payment of all of its notes and bonds and of all loans incurred by it. It is true that housing authorities are established by the Commonwealth, but in *Johnson-Foster Co.* v. *D'Amore Construction Co.* 314 Mass. 416, at page 419, this court said, "The statutes establishing housing

authorities make it plain that such an authority, although organized by and in each city and town in coöperation with the State, is nevertheless, when organized, a complete corporate entity in itself, distinct from the municipal corporation within whose territory it is set up, and exercising its powers in its own independent right. . . . It is an instrumentality of government, but it is also a corporation having the contracting powers of a corporation and suable as such 'in the same manner as a private corporation.' § 26FF. Its contracts are its own and are not those of the municipality." By the same reasoning we think that a housing authority is not the Commonwealth itself any more than a city would be the Commonwealth, and that the obligations of such an authority are not, as such, obligations of the Commonwealth. Housing authorities have a genuine existence of their own which is distinct from the existence of the Commonwealth. They own property which cannot accurately be said to be the property of the Commonwealth. Conceivably they might be able to pay all their obligations without the assistance of the Commonwealth. The liability of the Commonwealth upon its guaranties would be secondary and contingent. See *Charlestown Five Cents Savings Bank* v. *Wolf*, 309 Mass. 547, 549. The housing authorities have not been set up as merely colorable entities or as a subterfuge to evade the provisions of art. 62, § 3, and to enable the Commonwealth to borrow money without the two-thirds vote of each house and the recommendation of the Governor required by § 3. None of the borrowed money would be paid into or disbursed out of the treasury of the Commonwealth. All of it would be received and disbursed by the housing authority. In our opinion to say that the Commonwealth by guaranteeing the obligations of a housing authority as proposed would itself "borrow" the money would involve a failure to recognize the true relations intended to be brought about and would extend the word "borrow" beyond its natural signification as used in art. 62, § 3. In *Opinion of the Justices*, 261 Mass. 523, at pages 541–545, the Justices gave their opinion that a guaranty by the Commonwealth of bonds

of the Boston Elevated Railway Company thereafter to be issued from time to time while the railway should remain in public management would not violate art. 62. This opinion was confirmed in *Opinion of the Justices*, 261 Mass. 556. (See question 10 at page 563 and answer thereto at page 602.) And in *Opinion of the Justices*, 291 Mass. 567, a guaranty by the Commonwealth of bonds of a corporation to be set up by the State was apparently thought to be in violation of art. 62 only because the ultimate object was not a public one. It is true that in none of the three opinions last cited was separate mention made of § 3, but it is not to be supposed that § 3 was overlooked in dealing with art. 62 as a whole.

We are of opinion that the additional feature of the proposed act that each contract between the Commonwealth and a housing authority shall provide that the Commonwealth shall pay the housing authority "annual contributions" "not exceeding two and one half per centum of the cost of the project . . . ," and that the housing authority shall use such "contributions" for the payment of interest on, and principal of, its notes or bonds does not convert the borrowing of money by a housing authority into a borrowing by the Commonwealth. The lender of the money may feel reassured because the Commonwealth has pledged its full faith and credit to pay these "contributions" to the housing authorities, but he has not, we think, lent his money to the Commonwealth, and he must look, in the first instance at least, to the housing authority for repayment. We think these "contributions" are no more than assistance offered by the Commonwealth to the housing authorities to help them in part to carry the burden assumed by them in a public enterprise.

We think it follows from what has been said that the provisions of the proposed act with reference to guaranties by the Commonwealth of notes or bonds of housing authorities and the payment to them of "contributions" do not offend against art. 62, § 1, because the credit of the Commonwealth is given or loaned only to or in aid of a corporation publicly owned and managed for a public

purpose, and do not offend against art. 62, § 3, because under the provisions of the proposed act the Commonwealth does not "borrow money."

The answer to question (1) is "Yes."

The answer to question (2) is "Yes." In answering this question we do not rely upon art. 47.

The answer to question (3) is "No."

The answer to question (4) is "No."

STANLEY E. QUA.
HENRY T. LUMMUS.
ARTHUR W. DOLAN.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.