Request of House of Representatives,
No. 4928.

## OPINION OF THE JUSTICES.

Submitted April 3, 1961.

Answer returned April 4, 1961.

The following resolution adopted by the House of Representatives on March 21, 1961, was filed in this court on March 22, 1961:

"WHEREAS, the House of Representatives has pending before it the following bill:

"House Bill No. 225, An act relative to state guarantee of mortgages on industrial buildings.

. . .

"WHEREAS, questions have arisen concerning the constitutionality of this legislation, now therefore be it

"RESOLVED, That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions:

"1.  Do any provisions of said bill violate any provisions of the constitution of the state of New Hampshire?

"2.  Could the powers contemplated under House Bill No. 225 be extended to cover guarantees of loans to industry generally by the Industrial Park Authority?

"FURTHER RESOLVED, That the Speaker transmit ten copies of this Resolution together with ten copies of the foregoing House Bill to the Clerk of the Supreme Court for the consideration by said Court."

The following answer was returned:

*To the House of Representatives:*

The Justices of the Supreme Court make the following reply to your request for advice upon the questions of whether "any provisions of [House Bill 225] violate any provisions of the constitution of the state of New Hampshire," and whether "the powers contemplated under [said bill] could . . . be extended to cover guarantees of loans to industry generally by the Industrial Park Authority."

House Bill 225 would amend RSA ch. 162-A (supp) which established the Industrial Park Authority, the stated purpose of which was the "preservation and betterment of the economy of the state and its inhabitants" by provision of areas suitable for the development of additional industries. RSA 162-A:1 (supp). The Authority was created in 1955 following an advisory opinion with respect to House Bill 424 of that session, certain provisions of which were then considered by the Justices to be in conflict with the Constitution in the absence of any "provision for determination that particular undertakings by the Authority will serve the public purpose." *Opinion of the Justices,* 99 N. H. 528, 531.

Legislation was thereafter adopted in revised form with what is now RSA 162-A:8 (supp) inserted, requiring determination by the Governor and Council of whether a "proposed project will be of public use and benefit and within the authority conferred upon said corporation." *Cf. Opinion of the Justices,* 88 N. H. 484; RSA 481:7; *Conway* v. *Water Resources Board,* 89 N. H. 346.

In the advisory opinion of May 26, 1955 relating to the proposed Industrial Park Authority, the constitutional issue was stated thus: "The question is whether the expenditures will be primarily of benefit to private persons or private uses, which is forbidden, or whether they will serve public purposes for the accomplishment of which public moneys may properly be used." *Opinion of the Justices,* 99 N. H. 528, 530. See Const. Pt. II, *Art.* 5th.

The same question appears to be pertinent with respect to section 1 of House Bill 225, to which your inquiries relate. This section would authorize the Governor with the advice and consent of the Council and in the name of the State "to guarantee payment of a portion of first mortgages on industrial real property" within specified limits. The limits upon such guaranties are thereafter stated in subsections which follow. The meaning of subsection I is somewhat obscure, but is doubtless capable of clarification. This subsection states: "Such mortgage guaranty may be to the amount

of one hundred per cent of the current appraised value of the secured realty," which we take to refer to the value of the mortgaged realty. However the subsection next provides that "the guaranteed portion of such mortgage shall not exceed fifty per cent of the face amount of the secured realty," which appears to contradict the preceding provision, and is ambiguous as to whether the limit is fifty per cent of the "face amount" of the mortgage, or fifty per cent of the value of the mortgaged realty. The subsection continues: "provided always that in no event shall said guaranty . . . extend to or be construed to include the first fifty per cent (one-half) in value of said secured realty, land and buildings."

The purport of these provisions may have been more directly stated in the report recently made by the Industrial Progress Committee to the Governor, where it was stated: "The guarantee assumed by the State shall be limited to 50 per cent of the face amount of the [first] mortgage after not less than 50 per cent has been secured without guarantee." Report of the Industrial Progress Committee, *p.* 4 (Feb. 20, 1961). The report continued: "The effect of this provision is the possibility of 100 per cent financing of a new building to house a new industry when such construction is found warranted by the public interest." *Id.*

We assume that the quoted provisions of subsection I may be revised to more clearly state the proposal of the Committee. *Cf. Opinion of the Justices*, 99 N. H. 532, 535. On that assumption we are of the opinion that the further provisions of section 1 of the bill, headed "162-A:14-b" which would require determination by the Governor and Council of "whether the proposed guaranty will be of public use and benefit . . . " would adequately provide for establishment of the facts upon which the constitutional validity of any proposed guarantees would depend.

It should be added that this conclusion presupposes ·that any recommendation by the Authority to the Governor with respect to guaranty of a first mortgage under section 1 of the bill would necessarily relate to a mortgage on industrial real property of the character described by the existing law, in a project qualified under RSA 162-A:8 (supp) *supra.* Such approval of the project, coupled with approval of the specific guaranty under section 1 of the bill, would in our opinion adequately assure that a guaranty so approved "bears directly and immediately . . . upon the public welfare," and is not "merely incidental and subsidiary to assistance rendered to private industry." *Opinion of the Justices*, 99 N. H. 528, *supra*, 530-531.

We therefore are of the opinion that the provisions of section 1 of House Bill 225 would not violate the constitutional requirement that public funds shall not be devoted to private purposes. *Conway* v. *Water Resources Board, supra.* See *Opinion of the Justices,* 99 N. H. 519, 523 (aid for nursing education); *Opinion of the Justices,* 94 N. H. 515 (guaranty of loans to housing authority); *Opinion of the Justices,* 88 N. H. 484 (guaranty of bonds of Water Resources Board). See also, *Velishka* v. *Nashua,* 99 N. H. 161; *Opinion of the Justices,* 322 Mass. 745.

The provisions of section 2 of House Bill 225 appear to require no extended consideration. These provisions would permit certain banking institutions to invest within specified limits in mortgages guaranteed by the State under section 1 of the bill. The question appears to be wholly one of the wisdom of the measure, which is purely a legislative question. See *Peterborough Savings Bank* v. *King,* 103 N. H. 206. No constitutional issue is suggested or apparent.

In view of the generality of your first question we do not deem it within our province to speculate on whether other constitutional issues might be raised. *Opinion of the Justices,* 101 N. H. 518, 523; *Opinion of the Justices,* 99 N. H. 525, 528. However no constitutional defects are apparent on the face of the bill. Subject to the limitations herein stated your first inquiry is answered "no."

Your second inquiry with respect to this bill is whether the power contemplated "could . . . be extended to cover guarantees of loans to industry generally by the Industrial Park Authority." This inquiry we interpret to relate to guaranties of mortgages without regard to any limitation that the mortgages or the industries concerned shall be identified with a project approved under RSA ch. 162-A (supp). In the absence of further information (*Opinion of the Justices,* 97 N. H. 546) our answer to your second inquiry is "no."

> FRANK R. KENISON.
> LAURENCE I. DUNCAN.
> AMOS N. BLANDIN, JR.
> EDWARD J. LAMPRON.
> STEPHEN M. WHEELER.

April 4, 1961.

*Louis C. Wyman,* Legislative Counsel to the Governor, furnished a memorandum in support of negative answers.