Request of House of Representatives
No. 6650

OPINION OF THE JUSTICES

May 2, 1973

The following request of the house of representatives for an opinion of the justices was adopted and filed with the supreme court on April 12, 1973:

"WHEREAS, H B 619, an act authorizing a state guarantee of bonds of the industrial development authority for pollution control purposes is before the house of representatives for consideration, and

"WHEREAS, said bill finds that additional anti-pollution efforts by industry are necessary to advance the public interest in preserving the state's environment, but also finds that the cost of such efforts may adversely affect the state's economic base, and

"WHEREAS, said bill states that its purpose is to facilitate increased anti-pollution efforts while minimizing the adverse economic effects thereof, and

"WHEREAS, said bill (a) would provide for issuance of special industrial development authority bonds to finance construction of industrial pollution control facilities to be constructed by the industrial development authority for lease to industrial users; (b) would authorize the governor and council to pledge the state's credit on such bonds if the gover-

nor and council make certain prescribed findings; and (c) would specify the criteria for the findings to be made by the governor and council in that regard, and

"WHEREAS, a question has arisen as to the constitutionality of H B 619,

NOW THEREFORE BE IT

RESOLVED by the house of representatives:

"That the justices of the supreme court are respectfully requested to give their opinion and answer to the following question:

"Does the provision for the pledge of the state's credit, in view of the purposes and under the procedures and criteria set forth in H B 619, violate the constitutional requirement arising from Article 12 of Part First and Articles 5 and 6 of Part Second, or other sections of the Constitution of New Hampshire, that public funds shall not be devoted to private purposes?

"Be it further resolved, that the speaker of the house of representatives transmit seven copies of this resolution to the justices of the supreme court, along with copies of H B 619."

The following answer was returned:

*To the House of Representatives:*

The undersigned justices of the supreme court return the following answer to the question contained in your resolution adopted and filed with the supreme court on April 12, 1973. At the request of interested parties the time for filing memoranda on the submitted question was extended to April 24, 1973.

The question submitted is whether House bill 619 is constitutional within the meaning of N.H. CONST. pt. I, art. 12 and pt. II, arts. 5 and 6 prohibiting the expenditure of public funds for private purposes. House bill 619 would authorize the State to guarantee bonds of the New Hampshire Industrial Development Authority for the construction of industrial facilities " . . . designed to abate or control air or water pollution or to provide sewage or solid waste disposal facilities or any combination thereof." RSA 162-E:14 I (a).

It is further provided that the bonds may be guaranteed only after the industrial facility has been certified by the appropriate State agency to be in furtherance of pollution control or abatement and that the industrial facility will be essentially nonproductive, will improve the public health, welfare and safety and that the prime beneficiary of the facility will be the public. The proposed bill further provides that the lessee of the industrial facility will establish to the satisfaction of the Governor and Council its financial ability to pay the principal and interest of the bonds.

The stated public purpose of House bill 619 reads as follows: "I. The general court finds that protection and restoration of the purity of the state's water and air are of primary public interest and concern; that participation by industry is essential to the success of such efforts; that imposition of the cost of essentially non-productive industrial pollution control facilities upon the state's industry, while fostering the quality of the state's environment, may nevertheless threaten the economic welfare of the state by damaging its economic base; that, therefore, further pollution control efforts by industry must be fostered while at the same time minimizing the adverse economic impact thereof.

"II. The purpose of this act is to encourage additional pollution control by industry while lowering the cost thereof through pledging the credit of the state to guarantee special bonds of the industrial development authority to be used to finance the cost of industrial pollution control facilities."

"A legislative declaration of purpose is ordinarily accepted as a part of the act . . . ." (*Opinion of the Justices,* 88 N.H. 484, 490, 190 A. 425, 429 (1937) unless incompatible with its meaning and effect. In *Velishka v. Nashua,* 99 N.H. 161, 165, 106 A.2d 571, 573 (1954), the weight to be given legislative findings and declarations is stated as follows: "These legislative findings and declarations have no magical quality to make valid that which is invalid but they are entitled to weight in construing the statute and in determining whether the statute promotes a public purpose under the Constitution." *See also State v. Roberts,* 74 N.H. 476, 478, 69 A. 722, 723 (1908). The announced purpose of a statute is not conclusive as to its meaning but it is nevertheless entitled to weight

in determining whether the statute furthers a public need and purpose. *Corning Glass Works v. Max Dichter Co.,* 102 N.H. 505, 161 A.2d 569 (1960). Accordingly, in this advisory opinion, we accept the declaration of need and purpose stated in House bill 619 § 1. *See* 1A Sutherland, Statutory Construction §§ 20.03-20.05, 20.12, 20.13 (4th ed. Sands 1972).

The desideratum of clean air and clean water, or more accurately cleaner air and cleaner water, at a time when there is environmental concern for accomplishing this objective, attests to the public purpose involved. Heretofore the public purposes have been accomplished under RSA ch. 162-E (Supp. 1972) through the use of revenue bonds without financial loss to the State. *See* Chermak, The Law of Revenue Bonds 198 (1954). The proposed act (RSA 162-E:14) would in effect convert revenue bonds into general obligation bonds of the State. In determining the crucial question whether private benefit or public benefit will predominate, statutory provisions by which the potential loss to the State are reduced or limited are important and go a long way toward upholding the constitutionality of the statute. The act would be strengthened and would be more immune from constitutional attack if it contained workable limitations to lessen the potential of State loss in the event of default on the part of the lessee. Examples of the statutory provisions which would thus protect the State's interest would be (a) limitations on the total State guarantee on any specific project, (b) a service charge for the State's guarantee of the bonds if economically feasible and (c) some provision obligating the lessee to pay the costs of operation and maintenance of the facility. *See* RSA ch. 162-A (Supp. 1972); RSA 162-E:4 I (b) (Supp. 1972).

In view of *Opinion of the Justices,* 103 N.H. 258, 169 A.2d 634 (1961); *Opinion of the Justices,* 111 N.H. 199, 278 A.2d 357 (1971), and *Opinion of the Justices,* 112 N.H. 42, 288 A.2d 697 (1972), House bill 619 is constitutional on its face.

FRANK R. KENISON
LAURENCE I. DUNCAN
EDWARD J. LAMPRON
WILLIAM A. GRIMES
ROBERT F. GRIFFITH

May 2, 1973

Governor Meldrim Thomson, Jr., by his legal counsel, Charles G. Douglas III, for negative answer.

Brown Company, by Sulloway, Hollis, Godfrey & Soden and Martin L. Gross, for negative answer.

R. Peter Shapiro and Milton Shapiro for affirmative answer.

New Hampshire Industrial Development Authority by Eric Verrill, Palmer & Dodge, of Boston, Massachusetts, filed a memorandum of law.