# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE SENATE AND THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, Public purpose, Housing, Veteran, Opinions of the Justices. *Veteran. Housing. Jurisdiction*, Justiciable question.

Whether an expenditure of public money is for a public purpose is a proper question for judicial inquiry, in the determination of which the courts should give weight to material legislative findings of fact.

The dominant purpose of a proposed act of the General Court authorizing the expenditure by cities and towns of money raised by taxation to provide temporary housing for servicemen and veterans of World War II and their families at a time of acute shortage of housing was to recognize the services rendered by such servicemen and veterans and was a public purpose; and such an act would be within the power conferred by Part II, c. 1, § 1, art. 4, of the Constitution.

The Justices, having expressed opinions favorable to the constitutionality of a bill before the General Court with respect to the fundamental point involved in the specific questions asked, declined to answer a general question as to the constitutionality of the act in its entirety.

On June 8, 1946, the Justices returned the following answers to questions contained in an order adopted by the Senate and the House of Representatives in concurrence on June 4, 1946, and transmitted to the Justices on June 7, 1946:

To the Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the Senate and by the House of Representatives on June 4, 1946, and transmitted to the Justices on June 7, 1946. Copy of the order is hereto annexed. The questions submitted relate to a bill now pending in the General Court (House, No. 2035) which is entitled "An Act to authorize cities and towns to enter into contracts to provide temporary housing for veterans of world war II."

The order contains recitals in substance that there exists a shortage of housing available for veterans of World War II who were inhabitants of this Commonwealth, that this shortage can be presently relieved only by the use of temporary housing owned and built by the United States, that a Federal statute has provided for the distribution of such temporary housing to cities and towns throughout the United States for the use of veterans and their families, that the cities and towns will be obliged to incur certain expenses and assume certain financial obligations in connection with obtaining such temporary housing, and that "Grave doubts have arisen as to the power of the General Court under the constitution of the commonwealth to authorize cities and towns to incur expense and to raise money by taxation or by borrowing the same for the purpose of providing housing for veterans under the conditions above set forth." It is ordered that "the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the General Court on the following important questions of law: 1. Does it lie within the power of the General Court to authorize cities and towns to appropriate, raise and expend money for the purpose of providing temporary housing for veterans of World War II under the conditions above set forth: (a) Under the power to make all manner of reasonable and wholesome laws under Part II, Chapter I, Section I, Article IV of the Constitution of the Commonwealth; (b) Under the power of promoting the spirit of loyalty and patriotism, and of giving visible evidence that the commonwealth will not allow those who served the commonwealth and the United States during war to suffer hardship on their return because all available places in which to live have been absorbed by civilians in their absence; (c) Under the power granted by Article XLVII of the constitution of the commonwealth to the General Court to authorize cities and towns during time of war, public exigency, emergency or distress to provide shelter for their inhabitants at reasonable rates; or (d) Under any other power? 2. Is it within the power of the General Court to enact legislation substantially as proposed in the House bill submitted herewith, entitled 'An Act to authorize Cities

and Towns to enter into Contracts to provide Temporary Housing for Veterans of World War II'?"

The questions submitted must be answered with respect to the pending bill, and we so answer them. *Opinion of the Justices*, 313 Mass. 779, 781. The question underlying the specific questions submitted is whether it lies within the power of the General Court to authorize cities and towns to expend money for the purpose of providing for temporary housing of veterans of World War II in the manner provided by the pending bill. It is a fundamental principle of constitutional law frequently declared that money raised by taxation can be used only for public purposes and not for the advantage of private individuals. *Opinion of the Justices*, 231 Mass. 603, 611; 313 Mass. 779, 783. It is unnecessary to cite the numerous cases in which this principle has been declared. The basic inquiry, therefore, is whether, so far as the pending bill provides for the expenditure by cities and towns of public money raised by taxation, the purpose of such expenditure is a public purpose.

We are of opinion for reasons hereinafter stated that, so far as the pending bill provides for the expenditure by cities and towns of public money raised by taxation, the purpose of such expenditure is a public purpose even though individuals as such may profit thereby.

The distinction between a public purpose which is a proper object of governmental expenditure and a private purpose which is not a proper object of such expenditure was discussed by the court in *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288, 292–293, in the following language: "The distinction between a use or service which is public and therefore a proper object of governmental expenditure and one which is private and therefore an improper object to which to devote money belonging to all of the people has been discussed at length in its application to various situations in a number of instances coming before this court. . . . [citing numerous cases]. Some of these cases have become generally recognized as leading cases. They do not, however, establish any universal test. Each case must be decided with reference to the object sought to

be accomplished and to the degree and manner in which that object affects the public welfare. Frequently an object presents a double aspect in that it may in some respects result in conferring a benefit upon the public and in other respects it may result in conferring a benefit upon or in paying money to private individuals. In such instances the cases tend to distinguish between those results which are primary and those which are secondary or incidental and to classify the object according to its primary consequences and effects. At any rate it is plain that an expenditure is not necessarily barred because individuals as such may profit, nor is it necessarily valid because of incidental benefit to the public." There followed a statement of the factors which the cases suggest as proper to be considered, and it was said that "It is hardly necessary to say that the foregoing considerations are in no sense to be regarded as exclusive of others, and that great weight or little or no weight may be attached to some of them according to the presence or absence of others, or of still other conditions not hereinbefore enumerated." Among the numerous considerations stated are "whether, in so far as benefits accrue to individuals, the whole of society has an interest in having those individuals benefited," and "whether a special emergency exists, such as may be brought about by war or public calamity." Other considerations stated may have a bearing in determining whether the purpose of the expenditure of public money by cities and towns authorized by the pending bill is a public purpose.

The pending bill contains the following preliminary recitals: "*Whereas,* An acute shortage of housing exists in many of the cities and towns of the commonwealth and on account of such shortage many veterans of World War 11 are unable to obtain shelter for themselves and their families, and this shortage is likely to continue for a substantial period of time; and inability to obtain adequate shelter will cause suffering and disease among such veterans and their families unless such shortage is relieved; and *Whereas,* The only immediately available supply of housing for veterans consists of temporary buildings belonging to the

United States of America erected for purposes connected with the prosecution of World War II and no longer needed for such purposes and buildings of a similar character erected by the United States of America for the purpose of relieving the shortage of housing for veterans; and *Whereas*, By an Act known as Public Law 849, 76th Congress, the Congress of the United States has provided for the distribution of such housing, among cities and towns and other local bodies politic and corporate where they are most needed, by the Federal Public Housing Authority primarily at the expense of the United States; but *Whereas*, As a condition precedent to the distribution of such housing to local bodies the Federal Public Housing Authority requires the local body to execute a contract obligating it to co-operate in certain specified ways in the setting up and management of such housing, and the obligations of such a contract will require certain expenditures by such local body which must necessarily be raised in whole or in part by taxation or borrowing on the credit of the local body." By § 1 of the pending bill it is "declared that an acute shortage of housing exists in many of the cities and towns of the commonwealth; that on account of such shortage many veterans of World War II are unable to obtain shelter for themselves and their families regardless of their ability to pay for such shelter; that on account of the extent of the deficiency in housing and the difficulty in obtaining building materials it is likely that this shortage will continue for a substantial period; that on this account a time of public exigency, emergency and distress now exists so that the providing of shelter is a public function."

Section 1 of the pending bill also provides that "each city or town in which such shortage exists is hereby authorized to provide shelter for such of its inhabitants as are veterans of said war in the manner hereinafter designated for a period of five years from the date when this act becomes operative unless the general court shall previously determine that the time of public exigency, emergency and distress has ended, which period is hereinafter referred to as the present emergency." And § 3 thereof provides:

"During the present emergency any city or town in which, in the opinion of the state board of housing, a shortage of housing for veterans exists to the extent described in the preamble of this act, may, in addition to exercising the powers granted by chapter three hundred and seventy-two of the acts of nineteen hundred and forty-six, enter into a contract with the Federal Public Housing Authority, or any other appropriate federal agency, for the acceptance of an allotment of temporary housing which contains in substance . . . [certain] obligations" therein set forth.

The obligations of a city or town that are to be contained in a contract authorized by said § 3 of the pending bill include obligations to "select and provide a site or sites for the location of such temporary housing," to make certain other provisions which would render such temporary housing available for use, to "accept possession, custody and control of the temporary housing allotted to the city or town," to "manage and operate the project with efficiency and economy," not to "admit to occupancy of the project any persons other than eligible tenants and the necessary management employees," not to "use, sell or otherwise dispose of the project except as otherwise provided in the agreement or with the written consent of the Federal Public Housing Authority," to "charge fair rents based on the value of the accommodations, except that the city or town may adjust rents downward in particular cases to permit occupancy by eligible tenants at rents within their financial reach," to "charge all necessary and normal management operations, including taxes or payments in lieu of taxes, and a ground rental on the basis of $15 per year per family dwelling unit, against the amounts received from rents," to "meet from its own funds any operating deficit, and to pay any net operating profit to the Federal Public Housing Authority," and to "cause the dwelling units provided under this act to be removed within two years after the termination of the emergency declared by the President of the United States to exist on September 8, 1939 unless such time is extended by the National Housing Administrator." There are provisions relating to granting

the Federal Public Housing Authority right of entry upon the sites selected and rights of access thereto and permitting inspection of the premises by the Federal Public Housing Authority or its representatives and compliance with reasonable requirements of the Federal Public Housing Authority with respect to accounting and auditing and the handling of funds.

Section 2 of the pending bill defines certain words used therein as follows: "*Eligible tenant* — distressed families of service men and veterans and their families. The term 'families of service men' shall also include the family of any person who is serving in the military or naval forces of the United States, and the term 'veterans' shall include any person who has served in the military or naval forces of the United States during World War II and who has been discharged or released therefrom under conditions other than dishonorable. Families of service men or veterans include families of deceased service men or veterans. Families of service men and veterans and their families shall be considered as 'distressed' if they are without housing because of eviction or low income or for other reasons, or are affected by unusual hardships, and are unable to find in the area adequate housing within their financial reach, including the family of a returning veteran who is unable to find a dwelling in the area within his reach in which he can re-establish his family."

Undoubtedly the pending bill contemplates the expenditure by cities and towns of money raised by taxation either by direct expenditure of such money or by incurring obligations which will, or at least may, involve such expenditure.

Whether an expenditure of public money is for a public purpose is a subject of judicial inquiry. See *Opinion of the Justices*, 247 Mass. 589, 593. But in the decision of this question weight is to be given to legislative findings of fact as to existing conditions material in such determination. *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288, 293–294. The pending bill, if enacted, will contain legislative findings as to the existence of an acute hous-

ing shortage by reason of which many veterans of World War II are unable to obtain housing for themselves and their families and that this shortage is likely to continue for a substantial period of time. In considering the pending bill, we accord weight to these legislative findings.

In *Allydonn Realty Corp.* v. *Holyoke Housing Authority,* 304 Mass. 288, the court had under consideration the constitutionality of a statute authorizing cities and towns to expend money in aid of a project for the construction and maintenance of low-rent housing for families of low income (not paupers). It was said at page 295 that if this "were the sole object of the statute we might have difficulty, in view of former decisions and opinions of this court hereinafter discussed, in holding that object to be public in character. But this part of the statute does not stand alone. . . . The real purpose of the statute is . . . the elimination of slums and unsafe and unsanitary dwellings, and the provision by public funds of low-rent housing is only a means by which the main object is to be accomplished." It was held that the real or dominant purpose of this statute was a public purpose and consequently that the statute was constitutional. See *Stockus* v. *Boston Housing Authority,* 304 Mass. 507, 508.

We think that the dominant purpose of the expenditure of public money by cities and towns authorized by the pending bill is the recognition of the services of persons now serving in the military or naval forces of the United States, and persons who have served in said military or naval forces of the United States during World War II and who have been discharged or released therefrom under conditions other than dishonorable, by providing housing for such persons and their families or the families of such persons who have died, at a time when there is an acute shortage of housing and when it is particularly difficult for such persons or their families in general to secure such housing by reason of the services of such persons in the military or naval forces of the United States. While the purpose of the expenditure of public money is not expressly stated in the pending bill to be the recognition of such services, we think that this purpose is implicit in the pending bill and that the providing of

housing is the means by which this purpose is to be carried out.

That the expenditure of public money in recognition of military services, even long after such services have been rendered, though such expenditure of money is directly for the private benefit of the persons rendering such services, is a public purpose has been held or stated in decisions of this court or in opinions of its Justices. See *Opinion of the Justices,* 175 Mass. 599, 601–602; 190 Mass. 611, 615; 211 Mass. 608, 611–612; 240 Mass. 616, 617–618; *Rich* v. *Mayor of Malden,* 252 Mass. 213, 215; *Gray* v. *Salem,* 271 Mass. 495, 498–499; *Horrigan* v. *Mayor of Pittsfield,* 298 Mass. 492, 497–498. The constitutionality of statutes providing for preferences to veterans in the classified civil service has been sustained upon somewhat analogous principles. See *Mayor of Lynn* v. *Commissioner of Civil Service,* 269 Mass. 410, 413–415, and cases cited. In the decisions and opinions treating expenditures of money in recognition of military services as expenditures for a public purpose, the form of the expenditures considered was different from the form of the expenditure authorized by the pending bill. We perceive no difference, however, with respect to the nature of the purpose as a public purpose between the expenditures there considered and expenditure in the form authorized by the pending bill to provide housing for the benefit of service men, veterans and their families in the existing condition of an acute shortage of housing. It is not for us to express any opinion upon the expediency of expenditure of public money in the form authorized by the pending bill. Clearly, it is not so unreasonable as to preclude that purpose being a public purpose.

Whether, apart from the recognition of military service, the expenditure of public money in the manner authorized by the pending bill would be for a public purpose need not be considered. This factor is an integral part of the purpose of the pending bill.

Since the purpose of the expenditure of money by cities and towns authorized by the pending bill is a public purpose, the borrowing of money to meet such expenditure

and the incurring of obligations that will or may involve such expenditure are also for a public purpose.

We conclude that the purpose of the proposed expenditure of public money by cities and towns is a public purpose and consequently that it is within the power of the General Court under Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth to authorize such expenditure.

In view of this conclusion, we answer question 1, subdivision (a), "Yes."

Question 1, subdivision (b), involves a question which is considered in connection with the answer to question 1, subdivision (a), and seems to require no answer apart from the answer to question 1, subdivision (a).

In view of the answer given to question 1, subdivision (a), it does not seem necessary to consider question 1, subdivision (c), or question 1, subdivision (d).

Question 2 is general and presents no specific point. In our answer to question 1, subdivision (a), we have expressed an opinion favorable to the constitutionality of the pending bill with respect to the fundamental point involved. But it "has always been the practice for the Justices to confine their answers to particular questions of law submitted to them and not to discuss a broad inquiry as to the constitutionality of a proposed statute in its entirety. *Opinion of the Justices*, 145 Mass. 587, 592; 239 Mass. 606, 612; 261 Mass. 556, 613." *Opinion of the Justices*, 297 Mass. 559, 566–567. In accordance with this established practice, we do not attempt a broad inquiry as to the constitutionality of the pending bill in its entirety.

JUNE 8, 1946.

FRED T. FIELD.
HENRY T. LUMMUS.
STANLEY E. QUA.
ARTHUR W. DOLAN.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.