CITY OF BOSTON *vs.* THE MERCHANTS NATIONAL BANK OF BOSTON.

Suffolk. December 5, 1958. — December 18, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Constitutional Law*, Public purpose, Expenditure of public money, Municipal auditorium. *Boston. Municipal Corporations*, Municipal auditorium, Municipal finance.

St. 1954, c. 164, as amended by St. 1957, c. 718, authorizing the city of Boston "to construct, operate and maintain at a convenient location in said city a municipal auditorium with an exhibition hall, assembly hall and accessory rooms suitable for exhibitions, conventions and other shows and gatherings," and to borrow money for its construction, provides for the erection of an auditorium for a predominant public purpose and is constitutional even though incidentally the facilities of the auditorium may serve private purposes.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on October 31, 1958.

The case was reserved and reported by *Whittemore, J.*

*William H. Kerr,* (*William L. Baxter,* Corporation Counsel, with him,) for the plaintiff.

*William J. Speers, Jr.,* for the defendant.

WILKINS, C.J.   The purpose of this bill for declaratory relief under G. L. c. 231A is the determination of the constitutionality of St. 1954, c. 164, as amended by St. 1957, c. 718, and of the validity of $1,000,000 City of Boston Municipal Auditorium Loan Act of 1957 temporary notes, which the defendant has contracted to purchase.   The case is reported without decision by a single justice upon the bill, the answer, and a stipulation.   The answer admits the material allegations of the bill.   The stipulation is to the effect that the bill alleges all the material ultimate facts from which the rights of the parties are to be determined, and that this court may draw inferences as from a case stated.

Statute 1954, c. 164, as originally enacted, contains two sections.   Section 1 reads: "The city of Boston is hereby authorized and empowered to construct, operate and maintain at a convenient location in said city a municipal auditorium with an exhibition hall, assembly hall and accessory rooms suitable for exhibitions, conventions and other shows and gatherings in said city."   Section 2 provides for acceptance by the mayor and city council, and the act was so accepted.

On April 30, 1957, the Revised Ordinances of 1947 of the city were amended by inserting c. 6A, creating an auditorium commission appointed by the mayor and empowered to construct or to cause to be constructed the municipal auditorium authorized by St. 1954, c. 164.   The commission has been appointed and has organized.

By St. 1957, c. 718, § 1A was inserted in St. 1954, c. 164, authorizing the city to borrow money outside its debt limit for the purpose of constructing the auditorium, and the city, accordingly, has made an appropriation of $12,000,-000.   Pursuant to St. 1893, c. 192, § 1,[1] the city auditor and the city collector-treasurer, as directed by the mayor,

---

[1] "The city auditor and city treasurer of the city of Boston may, when so directed by the mayor of said city, use for any appropriation to be met by a loan, any funds in the city treasury raised by loan, whether under authority of any general or any special act; the amount so used to be replaced before the close of the financial year of said city, from funds raised as provided by law for meeting the appropriations for which such amount was used."

have used other funds for architects' fees and other initial expense, which funds must be replaced by December 31.

On October 17, 1958, the city accepted the defendant's bid for the temporary notes here concerned. The bid was conditioned on delivery on or before December 30 and was made "provided also that they are the valid obligation of the City and are lawfully authorized by chapter 164 of the Acts of 1954 as amended by chapter 718 of the Acts of 1957." Subsequently, the defendant advised the city collector-treasurer that it would refuse to complete the purchase because of advice of counsel that "there is substantial doubt as to the constitutionality of this enabling legislation."

The commission has voted to purchase a certain site, and has directed architects to design the auditorium as a two story structure with basement, having an exhibition hall, an assembly hall, lobby, and accessory rooms on the first floor, and another exhibition hall, balcony of the assembly hall, lobby, and accessory rooms on the second floor. The assembly hall and balcony are to have a seating capacity of between 5,000 and 6,000.

The commission is aware that the impending demolition of the Mechanics Building, which is "owned by a charitable corporation and long used for political conventions and rallies as well as other conventions, exhibitions, shows and gatherings, will leave the . . . city without a place within its limits suitable either for political gatherings of five thousand or so people or for the meetings of the moderate-sized conventions . . . or for certain privately sponsored exhibitions and shows." With this in mind the commission has directed the architects so to design the "municipal auditorium that it will be suitable not only for public exercises and hearings, political rallies and other meetings in the exercise of the constitutional right of assembly, and exhibitions and shows incidental to municipal functions such as public school pupils' work exhibits and fire prevention and civil defense displays, but also for rental for congresses and conventions of national and regional organizations of public

officials as well as of national and regional professional, trade, labor, fraternal, veterans' and eleemosynary organizations and for rental for privately sponsored exhibitions and shows commonly resorted to by the public for education or recreation such as home and furniture shows, sportsmen's and boat shows, and flower, dog and poultry shows."

We have to decide as to the application of the thoroughly established and undoubted principle of constitutional law that money raised by taxation can be used only for public purposes and not for the advantage of private individuals. *Opinion of the Justices*, 231 Mass. 603, 611. *Opinion of the Justices*, 313 Mass. 779, 783. *Opinion of the Justices*, 320 Mass. 773, 775. *Opinion of the Justices*, 337 Mass. 777, 781. The enabling act is a specific legislative approval of this very auditorium as a public purpose. *Burnham* v. *Mayor & Aldermen of Beverly*, 309 Mass. 388, 391. All rational presumptions are to be made in favor of its validity. *Perkins* v. *Westwood*, 226 Mass. 268, 271. *Moore* v. *Election Commrs. of Cambridge*, 309 Mass. 303, 311. *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 138. "Where practicable, a statute must be so interpreted as not to render it contrary to the terms of the Constitution and also to avoid grave doubts on that score." *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148. *Hayes* v. *Brockton*, 313 Mass. 641, 646.

Considering St. 1954, c. 164, and its amendment, we have no hesitation in determining that the erection of the proposed auditorium is a public purpose. Without it, the city of Boston, which is a cultural, educational, and historical center of more than national prominence, will have within its limits no place indoors suitable for public meetings of about five thousand people. Such a facility is an obvious necessity if the city is to maintain its position in the front rank of the municipalities of our nation. Lacking such a building, Boston might disappear from the list of great convention cities. It is well known that an appropriate convention site is of important value in promoting the public interests of a large city, a public advantage which is not

swallowed up because conventions may also be of incidental benefit to private citizens. We cannot accept the contrary contention.

The defendant concedes that "the construction of a municipal auditorium for 'public exercises and hearings, political rallies and other meetings in the exercise of the constitutional right of assembly, and exhibitions incidental to municipal functions such as exhibits of the work of public school pupils and fire prevention and civil defense displays' . . . would be a public purpose and if the statute limited the city to the construction of such a hall it would be constitutional." We think that the additional references to "an exhibition hall" or to "conventions and other shows and gatherings" do not derogate from construing the statute to be constitutional.

The defendant states in its brief that the city's interpretation of the statute shows that "the General Court, as well as the city, contemplated the construction of a building in which public and private purposes were to be jointly served, and that the plaintiff, pursuant thereto, intends to include in the building facilities unneeded for public use and required only for the private or commercial purpose." Of course, any interpretation by municipal officials has slight, if any, significance in ascertaining legislative intent. But, fundamentally, the defendant's assertion is unacceptable. This structure does not have to be so designed as to become an unnecessary drain on the taxpayers. If a sound financial scheme embraces facilities which tend to make possible a more nearly full time use, it is not to be presumed that the dominant purpose ceases to be public and becomes private. The presumption is the other way. *Talbot* v. *Hudson,* 16 Gray, 417, 522. We need not depend upon an inference to determine that the public use is dominating or primary and that any other use is secondary or incidental. See *Wheelock* v. *Lowell,* 196 Mass. 220, 224; *Allydonn Realty Corp.* v. *Holyoke Housing Authy.* 304 Mass. 288, 292; *Opinion of the Justices,* 320 Mass. 773, 776. But were it required, we would draw that inference. Regarding the ob-

jectives enumerated in the statute, we do not perceive that they have the effect of swinging the pendulum to the side of a predominating private purpose. To us the objectives seem reasonably incidental to public use. If, in practice, unforeseeable improprieties should develop, means for their correction are available. See *Wheelock* v. *Lowell,* 196 Mass. 220, 225.

In *Kingman* v. *Brockton,* 153 Mass. 255, it was said, in accordance with the general principle first stated above, that the expenditure by a city for the erection of a hall as a memorial to the soldiers and sailors of the war of the Rebellion was for a public purpose, and that a statute authorizing it was constitutional. A majority of the court, however, held that the Legislature could not authorize a city to plan the building so as to devote a portion for the use, at a nominal rent, by a post of the Grand Army of the Republic as long as it should exist as an organization. The language of that case has been criticised. *Opinion of the Justices,* 175 Mass. 599, 603. In the present entirely different circumstances we do not consider that case to be an authority against the constitutionality of St. 1954, c. 164, as amended.

We are not impressed with the suggestion that there appears no reason to believe that private capital "would not be forthcoming to fill the need" arising from the demise of the Mechanics Building. The suggestion admits the need. We know judically that the Mechanics Building has in many recent years been in default in payment of its real estate taxes. *Massachusetts Charitable Mechanic Assn.* v. *Hersey,* 318 Mass. 518. *Massachusetts Charitable Mechanic Assn.* v. *Beede,* 320 Mass. 601. It definitely does not appear that such a private project is contemplated now or in the foreseeable future. Nor is any suggestion made as to how long the public should wait for someone to come forward to fill the void.

Other States have uniformly upheld the construction of municipal auditoriums: *Haggerty* v. *Oakland,* 161 Cal. App. 2d 407, 412–414 (the construction of a building with banquet

and convention facilities and its leasing to private concerns by a municipality held to be a proper municipal function); *Denver* v. *Hallett,* 34 Colo. 393, 411 (the erection of an auditorium held to be a public purpose for which bonds might be issued even though the hall would be incidentally used for conventions and national associations); *Starlight Corp.* v. *Miami Beach,* 57 So. 2d 6, 8 (Fla.) (the construction and operation of a municipal auditorium for the entertainment of visitors to the city held to be a proper municipal function); *Tillman* v. *Mayor of Athens,* 206 Ga. 289, 294 (the erection of a civic hall as a meeting place for civic groups and for citizens generally held to be a public purpose); *Robbins* v. *Kadyk,* 312 Ill. 290, 296 (the erection of a community building for political meetings and for amusements and entertainments held to be a public purpose for which a tax might be levied); *McKinney* v. *Owensboro,* 305 Ky. 254, 258 (an auditorium held to be a public project, the construction of which might be financed by the issuance of tax free bonds); *Anderson* v. *Thomas,* 166 La. 512, 522 (the erection of a municipal auditorium stated to be a public purpose); *Carlisle* v. *Bangor Recreation Center,* 150 Maine, 33, 35–36 (an auditorium containing facilities for basketball games, for indoor skating rink, for exhibitions and for other indoor events held to be a public purpose for which tax funds might be expended); *Halbruegger* v. *St. Louis,* 302 Mo. 573, 589–590 (an auditorium to be used for the holding of public meetings, and to provide suitable meeting places for educational, moral, musical, industrial, labor and other purposes held to be a public purpose for which bonds might be issued); *Greensboro* v. *Smith,* 241 N. C. 363, 367 (an auditorium held to be a public purpose for which a municipal corporation might appropriate available surplus funds not derived from taxes or a pledge of its credit); *Meyer* v. *Cleveland,* 35 Ohio App. 20, 26 (a municipal stadium held to be a public building which could be constructed and maintained by the city); *State* v. *Barnes,* 22 Okla. 191, 199 (a convention hall held to be a public utility or public use for the construction of which bonds might be issued); *Bernstein* v. *Pittsburgh,* 366 Pa.

200, 203 (an open air auditorium held to be a proper use of land conveyed to city "for the use of the people of Pittsburgh and the Public as a Public Park"); *Madison* v. *State*, 1 Wis. 2d 252, 258 (the construction of an auditorium and civic center held to be a public building and thus within the authority granted the municipality).

A final decree is to be entered declaring that St. 1954, c. 164, as amended by St. 1957, c. 718, is constitutional; that the $1,000,000 City of Boston Municipal Auditorium Loan Act of 1957 temporary notes are valid obligations of the city; and that the defendant bank is bound by its agreement to purchase the notes.

*So ordered.*