# OPINIONS OF THE JUSTICES.

OPINION OF THE JUSTICES TO THE GOVERNOR.

*Constitutional Law*, Public purpose, Water pollution abatement, Credit of
the Commonwealth, Use of public money or property. *Water Pollution.*

The use of public funds for making loans to private borrowers under
St. 1970, c. 746, in aid of abatement of industrial water pollution would
be for a public purpose notwithstanding incidental benefit to the bor-
rowers. [772]

Although abatement of industrial water pollution is a public purpose, the
issuance of bonds by the Commonwealth and the use of the proceeds
thereof for making loans to private borrowers in aid of such abatement
pursuant to St. 1970, c. 746, would violate art. 62, § 1, of the Amend-
ments of the Massachusetts Constitution, irrespective of the relation
of the interest rate paid by the Commonwealth on its bonds to the in-
terest rate paid to the Commonwealth by the borrowers. [773–774]

On March 23, 1971, the Justices submitted the following
answers to questions propounded to them by the Governor.

To his Excellency, the Governor of the Commonwealth:

The Justices of the Supreme Judicial Court respectfully
submit their answers to the questions set forth in your re-
quest of January 29, 1971, transmitted to us on the same
day. The questions arose in connection with St. 1970,
c. 746, "An Act providing financial assistance for a water
pollution abatement program for industrial wastes."

The act provides that the Department of Commerce and
Development (department) may "enter into contracts with
industrial and commercial businesses . . . to provide state
financial assistance in the form of loans to said businesses
for the construction of water pollution waste treatment
facilities to be used by said businesses . . . ." The loans
are to be made on such terms and conditions as the depart-
ment deems advisable. As a condition precedent to making
a loan, the commissioner of the department is to certify

that the applicant for the loan is unable to construct the facility without financial assistance from the Commonwealth and that the continued operation of the applicant is necessary for the continued economic well-being of the Commonwealth or a region thereof. A second condition precedent to the making of a loan is a certification by the water resources commission that "the construction, operation and maintenance of such facility is consistent with a comprehensive plan approved by the division of water pollution control for the abatement of water pollution in the city, town or water pollution abatement district in which the business firm applying for said loan is located." The Division of Water Pollution Control (division) has control over terms of the loan contract with respect to "planning, construction, operation, and administrative and inspection costs." Repayment of the loan may not be required at a rate of interest higher than the rate paid by the Commonwealth when borrowing the funds from which the loan is made.

The department is authorized to expend a sum not exceeding $25,000,000. To meet the necessary expenditures, the State Treasurer, upon the request of the Governor, shall issue and sell bonds of the Commonwealth. The department and the division have the authority to make rules and regulations for the proper administration of the act.

The request states that the commissioner of the department is prepared to certify one or more private corporations which have applied for loans under c. 746, but before he can do so the Governor must perform certain acts, including a request for the issuance of bonds. The Governor is fully prepared to exercise his powers under the act provided he "can legally do so."

The request concludes: "As doubts have been raised by the Department of the State Treasurer and the Comptroller's Division, as to whether I may constitutionally exercise the powers referred to above with respect to c. 746, and as to whether the Commissioner of Commerce and Development, the Comptroller, the State Treasurer and other officers of the Commonwealth may perform the duties and exercise

the powers assigned to them by statute in the implementation of c. 746, I respectfully request your opinion . . . ."

The questions are:

"1. Would the issuance of bonds of the Commonwealth and the use of the proceeds thereof for the making of loans to private individuals and organizations in the manner provided in St. 1970, c. 746, violate Section 1 of Article LXII of the Amendments to the Constitution of the Commonwealth —

"(a) If the interest rate payable for such loans were equal to the interest rate payable by the Commonwealth to the holders of the bonds issued to finance the same?

"(b) If the interest rate payable for such loans were less than the interest rate payable by the Commonwealth to the holders of such bonds?

"2. Would the use of the proceeds of bonds of the Commonwealth for the making of loans to private individuals and organizations in the manner provided in St. 1970, c. 746, with the principal and interest on such bonds payable from funds raised by taxation, involve the expenditure of public funds for other than a public purpose?"

In response to our invitation to interested persons to file briefs not later than February 18, 1971, briefs were filed on behalf of the Attorney General and Associated Industries of Massachusetts.

1. With reference to the second question, we believe that the use of public funds under the act would not involve an expenditure of public funds for other than a public purpose. Numerous cases have discussed the distinction between a use or service which is public and therefore a proper object of governmental expenditure and one which is private and therefore an improper object to which to devote public funds. See *Opinion of the Justices*, 320 Mass. 773, 775. "Each case must be decided with reference to the object sought to be accomplished and to the degree and manner in

which that object affects the public welfare. Frequently
an object presents a double aspect in that it may in some
respects result in conferring a benefit upon the public and
in other respects it may result in conferring a benefit upon
or in paying money to private individuals. In such instances
the cases tend to distinguish between those results which
are primary and those which are secondary or incidental and
to classify the object according to its primary consequences
and effects. At any rate it is plain that an expenditure is
not necessarily barred because individuals as such may
profit, nor is it necessarily valid because of incidental benefit
to the public." *Allydonn Realty Corp.* v. *Holyoke Housing
Authy.* 304 Mass. 288, 292–293. In the instant situation it
is clear that the primary purpose of St. 1970, c. 746, is the
abatement of industrial water pollution. Such pollution is
obviously a danger to the public health, safety and welfare;
and a program for its abatement without impairment of
local industrial development involves an important public
purpose. See arts. 49 and 88 of the Amendments to the
Massachusetts Constitution. Any benefit to recipients of
loans under St. 1970, c. 746, would be "incidental" to the
accomplishment of the primary purpose of that act. See
*Opinion of the Justices,* 313 Mass. 779; *Boston* v. *Merchants
Natl. Bank,* 338 Mass. 245. See also *Opinion of the Justices,*
337 Mass. 800, 806.

To question 2, we answer, "No."

2. Question 1 presents a more difficult problem. Article 62,
§ 1, of the Amendments to the Massachusetts Constitu-
tion provides, "The credit of the commonwealth shall not
in any manner be given or loaned to or in aid of any in-
dividual, or of any private association, or of any corporation
which is privately owned and managed." The debates con-
cerning art. 62 at the Constitutional Convention of 1917–
1918 indicate "that the amendment was designed solely to
force State assistance to public service enterprises to be on a
'pay-as-you-go' basis not involving any absolute or con-
tingent debt obligation on the part of the Commonwealth."

*Opinion of the Justices*, 337 Mass. 800, 807–808. See *Ayer* v. *Commissioner of Admn.* 340 Mass. 586, 591–592.

Cases dealing with art. 62 have usually involved a clear loan of credit by the Commonwealth, such as a guaranty of the obligations of another. See the cases collected in *Opinion of the Justices*, 337 Mass. 800, 807. In that opinion such cases were distinguished from the purchase for cash (with funds borrowed in anticipation of assessments) of an option and of continuing railroad service.

The 1970 statute provides no guaranty, but it does authorize the Commonwealth to borrow money and to lend that money (apparently without new appropriation; cf. *Singleton* v. *Treasurer & Recr. Gen.* 340 Mass. 646, 649) to private businesses. Although the loan is to be for a public purpose, it is made to private persons and is likely to be of substantial benefit to them and to their property. A further difficulty is that § 1 of the 1970 statute provides only somewhat meager and general standards to guide the department in making loans and loan contracts.

In any event, there plainly is a direct connection between the State borrowing (which will remain outstanding) and the subsequent private loans, made under statutory restrictions which leave much to departmental discretion. The arrangement leads to the same inquiry as was made in *Ayer* v. *Commissioner of Admn.* 340 Mass. 586, 593, 597–599, where we felt bound to treat as "a State operation" the activities of an association which, as there to be employed, in effect and substance would be used to accomplish "constitutional evasion."

The arrangement contemplated by the 1970 statute is comparable. The two steps of (a) borrowing by the State and (b) lending of the borrowed cash to a private borrower, would have essentially the same effect as a State guaranty of a loan to the ultimate borrower. Such a guaranty would be a violation of art. 62. To treat the arrangement under the 1970 statute differently would be to emphasize form rather than substance.

The Commonwealth, by making loans under the 1970

statute, would expedite the abatement of public pollution nuisances and would receive the public benefit of additional pollution control facilities. There would be substantial likelihood that the owner-borrower would eventually pay for the facilities by paying the loan. Nevertheless, this is not the direct State purchase of a service (and an option), as in the railroad situation discussed in *Opinion of the Justices*, 337 Mass. 800, 807–808. We assume that, by carefully framed statutory authorization of direct State action with the use of appropriated funds, the Commonwealth can obtain essentially the same beneficial consequences without any evasion of art. 62. Compare the statutory provisions for the abatement and control of health nuisances. See G. L. c. 111, §§ 122–142E, as amended. We, of course, do not suggest that all forms of public payments or aid to private businesses for the construction of waste treatment facilities or for other public purposes would be unconstitutional. See, for discussion of other methods of accomplishing public purposes through indirect assistance of private ventures, e.g., *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.* 348 Mass. 538; *Opinion of the Justices*, 354 Mass. 779; *Massachusetts Housing Fin. Agency* v. *New England Merchants Natl. Bank*, 356 Mass. 202.[a] See also *Opinion of the Justices*, 337 Mass. 800; *Opinion of the Justices*, 347 Mass. 789, 790–791; *Opinion of the Justices*, 356 Mass. 775.

The relationship between the interest paid by loan recipients to the Commonwealth and the interest paid by the Commonwealth, we believe, has no bearing upon the question whether the act violates art. 62.

To question 1, we answer, "Yes."

G. Joseph Tauro.
John V. Spalding.
R. Ammi Cutter.
Jacob J. Spiegel.
Paul C. Reardon.
Francis J. Quirico.
Robert Braucher.