OPINION OF THE JUSTICES TO THE HOUSE
OF REPRESENTATIVES.

*Constitutional Law*, Industrial Mortgage Insurance Agency, Public purpose, Credit of the Commonwealth.

Pending legislation proposing to establish a "Massachusetts Industrial Mortgage Insurance Agency" empowered to provide insurance on loans "made to finance the acquisition, construction or alteration" of industrial development facilities has as its primary purpose the public purpose of reducing unemployment and stimulating the economy, and

incidental benefits received by recipients of insured loans or by mortgagees of insured loans do not render the bill constitutionally infirm. [885-886]

Pending legislation proposing to establish a Massachusetts Industrial Mortgage Insurance Agency empowered to provide insurance on loans made to finance industrial development facilities, stating that the insurance provided by the agency "shall be payable solely from the . . . fund established by . . . [the bill] and shall not constitute a debt or pledge of the faith and credit of the commonwealth or of any subdivision thereof," setting forth safeguards to insure that monies in the funds will be sufficient to pay the insurance provided, but not authorizing the agency to borrow funds, and permitting, but not requiring, the Commonwealth to make appropriations to the agency does not violate art. 62, § 1, of the Amendments to the Massachusetts Constitution, as appearing in art. 84. [887]

Under art. 87 of the Amendments to the Massachusetts Constitution, no problem of constitutional dimension appears in pending legislation proposing to establish the Massachusetts Industrial Mortgage Insurance Agency as a "public corporation and government instrumentality" and to place it in the Department of Commerce and Development but not subject to the department's control. [887-888]

In pending legislation proposing to establish a public corporation to provide insurance on loans made to finance "industrial development facilities," inclusion in the definition of such facilities of the term "recreation enterprises" does not raise a question under the Massachusetts Constitution as to the validity of the public purposes of the legislation of stimulating the economy and reducing unemployment. [888]

On September 12, 1975, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House on June 30, 1975, and transmitted to us on July 8, 1975. The order recites that there is pending before the General Court House Bill No. 5935, entitled "An Act establishing a Massachusetts industrial mortgage insurance agency," and that grave doubt exists as to its con-

stitutionality if enacted into law. A copy of the bill was transmitted to us with the order. We invited interested parties to submit briefs on both sides of the issues. The only brief received was that of the Attorney General.

Section 1 of the proposed bill explains the necessity for an industrial mortgage insurance agency (agency). It states that "the high cost . . . [and] lack of availability of industrial loans for small business makes it extremely difficult" for industrial enterprises in the Commonwealth to hold their present employment levels or to expand. As a result of increasing costs in many areas, "the commonwealth suffers from structural economic weaknesses which contribute to a rising level of chronic unemployment and underemployment." This "lack of gainful employment puts additional pressure on the state's welfare programs and increases the cost of unemployment compensation." Creation of the agency "would encourage the making of industrial loans . . . for the public purpose of furthering industrial expansion" and would "promote the prosperity and general welfare of all citizens." It would increase gainful employment, decrease welfare and unemployment compensation costs, increase the tax base of the Commonwealth, increase the availability of capital for small enterprises, increase available industrial space, and provide reclamation of existing sites and lower cost capital for abatement of industrial pollution.

For these purposes, the bill would establish the Massachusetts Industrial Mortgage Insurance Agency, "a body corporate and politic, constituting a public corporation and government instrumentality." The agency would be placed in, but not subject to, the Department of Commerce and Development and would "maintain a close liaison with . . . [that department] in order to facilitate a coordinated effort in the area of industrial development."

The bill further provides that the agency would be governed by a board of directors (board) of five members, four of whom would be appointed by the Governor, and at least three of whom have had experience in the fields of real

estate, development and credit. The board would have power to appoint agents and employees as it deemed necessary.

The bill establishes an industrial mortgage insurance fund which would receive all premiums collected by the agency and which could receive State appropriations or other monies made available to it. The fund would be held by one or more banks or trust companies for the security of holders of industrial mortgage loans and would be governed by a trust agreement between the agency and the trustees.

The agency would be empowered to provide insurance on loans "made to finance the acquisition, construction or alteration" of industrial development facilities. The agency is authorized to enter into agreements for insurance, fix premium rates and exercise any powers necessary or incidental to those enumerated. The insurance so provided would be payable only from the fund and would "not constitute a debt or pledge of the faith and credit of the commonwealth."

In determining whether to insure a loan, the board would be required to make a series of findings specified by the bill which would insure the safety of the loan and guarantee, to the extent possible, that the project being financed "is such that a definite benefit to the economy of the commonwealth may reasonably be expected." The board would be required to examine the nature and extent of the employment opportunities to be generated by the project. Additionally, before insuring any particular loan, the board would be required to make a finding that the insuring of the loan would not cause the insured debt service coming due in any one calendar year on account of all insured loans to exceed one hundred per cent of the amount in the mortgage insurance trust.

We have been presented with the following two questions:

"1. Would it be a violation of the Constitution of the Commonwealth for the General Court to establish a

public corporation within, but not subject to the supervision or regulation of the Department of Commerce and Development with power, among other things, to provide insurance of loans, or their debt service, made to finance the acquisition, construction or alteration or any combination thereof, of industrial development facilities through an industrial mortgage insurance fund derived from premiums and other proceeds of its operations and from appropriations by the General Court?

"2. Does the inclusion of the term 'recreation enterprises' within the definition of industrial development facilities, as that definition has been discussed in various opinions of the justices, raise a constitutional question as to the validity of its being a public purpose within the meaning of the Massachusetts Constitution?"

We answer them in order.

1. At the outset, we note that this question is of a general nature and does not point to any particular part of the bill, nor to any precise section of the Constitution, about which there are doubts. We have often stated that we are not required to answer such questions. *Opinion of the Justices,* 328 Mass. 679, 691 (1952). *Opinion of the Justices,* 330 Mass. 713, 727 (1953). *Opinion of the Justices,* 347 Mass. 789, 791 (1964). *Opinion of the Justices,* 357 Mass. 846, 851 (1970). However, it seems clear that the doubts here exist as to (a) whether there is a valid public purpose, (b) whether there is a violation of the "credit clause" (art. 62, § 1, of the Amendments to the Massachusetts Constitution, as appearing in art. 84), and (c) whether placement of the agency in, but not subject to, the Department of Commerce and Development violates any constitutional provisions. Accordingly, we will construe the question in this manner and proceed to answer it. See *Opinion of the Justices,* 349 Mass. 794, 801 (1965).

a. "It is a fundamental principle of constitutional law frequently declared that money raised by taxation can be used only for public purposes and not for the advantage of private individuals." *Opinion of the Justices,* 337 Mass. 777, 781 (1958), quoting from *Opinion of the Justices,* 320 Mass. 773, 775 (1946). See Massachusetts Constitution, Part II, c. 1, § 1, art. 4. See also *Opinion of the Justices,* 231 Mass. 603, 611 (1919); *Boston* v. *Merchants Natl. Bank,* 338 Mass. 245, 248 (1958); *Massachusetts Housing Fin. Agency* v. *New England Merchs. Natl. Bank,* 356 Mass. 202, 212 (1969). The crucial inquiry in cases such as this, where there may be benefits to private parties, is whether the private benefits are primary or are merely incidental to achievement of the public purpose. *Allydonn Realty Corp.* v. *Holyoke Housing Authy.* 304 Mass. 288, 292-293 (1939). *Lowell* v. *Boston,* 322 Mass. 709, 737 (1948), app. dism. sub nom. *Pierce* v. *Boston,* 335 U. S. 849 (1948). *Court St. Parking Co.* v. *Boston,* 336 Mass. 224, 229 (1957), app. dism. sub nom. *Rosengard* v. *Boston,* 355 U. S. 272 (1957). *Opinion of the Justices,* 341 Mass. 738, 749 (1960). *Opinion of the Justices,* 359 Mass. 769, 772 (1971). "The paramount test should be whether the expenditure confers a direct public benefit of a reasonably general character, that is to say, to a significant part of the public, as distinguished from a remote and theoretical benefit," *Opinion of the Justices,* 337 Mass. 777, 781 (1958), and whether the "aspects of private advantage . . . are reasonably incidental to carrying out a public purpose in a way which is within the discretion of the Legislature to choose." *Court St. Parking Co.* v. *Boston, supra,* at 231.

Here, the declared purpose of the proposed bill is the "[stimulation of] industrial growth and expansion" in order to increase the gainful employment of citizens of the Commonwealth. "The reduction of unemployment and the alleviation of economic distress," as well as the "[s]timulation of investment and job opportunity . . . are proper public purposes." *Anderson* v. *O'Brien,* 84 Wash. 2d 64, 70 (1974). See *Roan* v. *Connecticut Industrial Bldg. Commn.*

150 Conn. 333, 339-340 (1963); *Roe* v. *Kervick,* 42 N. J. 191, 215 (1964). See also *Howes Bros. Co.* v. *Unemployment Compensation Commn.* 296 Mass. 275 (1936), cert. den. 300 U. S. 657 (1937); *Carmichael* v. *Southern Coal & Coke Co.* 301 U. S. 495 (1937). The Legislature, in requiring the board to make findings as to how the insurance of each loan will affect employment and to consult with local officials in this regard, has taken adequate precautions to ensure that these valid public purposes will be served by creation of the agency. The fact that some benefits may accrue to private parties as a result is not constitutionally fatal to the proposed bill. "That the industry which seeks an insured mortgage may initially benefit by the program because it stimulates the availability of otherwise unattainable financing, or that the mortgagee . . . could in the event of default call upon the . . . commission to redeem his investment, is incidental to the prime purpose of the act and is not sufficient to defeat it." *Roan* v. *Connecticut Industrial Bldg. Commn., supra,* at 340.

We conclude that the primary purpose of the bill is the public purpose of reducing unemployment and stimulating the economy, and that any benefits to the recipients of insured loans or to the mortgagees whose loans are insured is incidental to this valid primary purpose. Accordingly, we find no constitutional infirmity in this regard.[1]

b. Article 62, § 1, of the Amendments to the Constitution, as appearing in art. 84, provides that "[t]he credit of

---

[1] We note here that our only concern is with the constitutionality of the proposed legislation. *Opinion of the Justices, ante,* 831, 848 (1975). "It is not our function to consider the expediency of an enactment or the wisdom of its provisions." *Opinion of the Justices, ante,* 824, 826 (1975), quoting from *Commonwealth* v. *Henry's Drywall Co. Inc.* 366 Mass. 539, 544 (1974). Furthermore, our conclusion is limited to the constitutionality of the bill "on its face." We "cannot exclude the possibility that a provision of the bill, although constitutional on its face, may operate in an unconstitutional manner when applied to some particular state of facts not now envisaged." *Opinion of the Justices, ante,* 857, 867 (1975). However, we leave resolution of that problem, should it arise, to the appropriate time and place.

the commonwealth shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned or managed." The questions raised are whether the credit of the Commonwealth is pledged by this bill, and if so, whether that credit is pledged to a private agency.

We believe that the credit of the Commonwealth is not given or pledged in aid of the agency. There is no authority given to the agency to borrow funds, and clearly no indication that the Commonwealth would back up such borrowing. See *Massachusetts Housing Fin. Agency* v. *New England Merchs. Natl. Bank,* 356 Mass. 202, 216 (1969). See also *Opinion of the Justices,* 337 Mass. 800, 807-808 (1958); *Opinion of the Justices,* 359 Mass. 769, 772-773 (1971). Additionally, there is no pledge of credit where the Commonwealth is permitted, but not required, to make appropriations to the agency. See *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.* 348 Mass. 538, 558 (1965); *Massachusetts Housing Fin. Agency* v. *New England Merchs. Natl. Bank, supra.* Further, we are persuaded by the fact that all "insurance provided by the agency shall be payable *solely* from the industrial mortgage insurance fund" (emphasis added) and that safeguards have been established to insure that the monies in the fund will be sufficient for this purpose. Thus, we believe that the disclaimer contained in the bill, that the insurance "shall not constitute a debt or pledge of the faith and credit of the commonwealth or of any subdivision thereof," is effective, and there is no violation of "credit clause." As a result, we need not consider whether the agency would be considered "private" for these purposes. See *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co., supra.*

c. Until 1966, art. 66 of the amendments to the Massachusetts Constitution required that "every executive and administrative office, board and commission" be placed in one of the twenty departments into which the Executive Branch of the government was to be organized. In 1966, however, this article was annulled by art. 87 of the Amendments.

There appears, then, to be no problem of constitutional dimension in placing the agency in the Department of Commerce and Development but not subject to its control. Cf. *Opinion of the Justices*, 334 Mass. 721 (1956).

In light of what we have said regarding these three areas of possible constitutional challenge, we answer the first question, "No."

2. The second question asks whether inclusion of the term "recreation enterprises" in the bill "raise[s] a constitutional question as to the validity of its being a public purpose within the meaning of the Massachusetts Constitution." As previously stated, the purposes of the bill are primarily the stimulation of the economy of the Commonwealth and the reduction of unemployment. The achievement of these purposes is unrelated to the nature of the industry in which the jobs are created and is not antithetical to supporting increased or improved recreational facilities. Furthermore, assistance to recreational facilities may constitute a public purpose in appropriate circumstances. See *Opinion of the Justices*, 356 Mass. 775 (1969). Accordingly, our answer to the second question is "No."

G. Joseph Tauro
Paul C. Reardon
Francis J. Quirico
Robert Braucher
Edward F. Hennessey
Benjamin Kaplan
Herbert P. Wilkins