OPINION OF THE JUSTICES TO THE GOVERNOR.

*Constitutional Law,* Public purpose, Credit of the Commonwealth.
*Massachusetts Community Development Finance Corporation.*
*Community Development Corporations.*

The Massachusetts Community Development Finance Corporation, cre-
ated pursuant to G. L. c. 40F, § 2, following legislative findings of
the existence of substandard, decadent, or blighted areas in the Com-
monwealth, unemployment and underemployment, and the need for
substantial funds to develop such areas and the unavailability of pri-
vate capital, was established primarily for a valid public purpose;
the expenditure of public funds for the purposes of the Finance
Corporation may be constitutionally effected through the sale of
Commonwealth bonds and the purchase of all the common stock of
the Finance Corporation, which, apart from investments under c. 29,
§ 38, may use the proceeds of its stock sales only to purchase capital
participation instruments in community development corporations,
the projects and "target" areas of which must be approved by the
Finance Corporation's board of directors after findings that its funds
will confer direct public benefits, and that any private advantage will
be merely incidental to carrying out the public purposes. [906-909]
The Commonwealth, consistent with art. 62, § 1, of the Amendments to
the Constitution, as appearing in art. 84, may borrow funds and
purchase all the common stock of the Massachusetts Community De-
velopment Finance Corporation, which, apart from investments un-
der G. L. c. 29, § 38, may use the proceeds of its stock sales only to
purchase capital participation instruments in community develop-
ment corporations authorized to expend funds in accordance with
the conditions and limitations set forth in G. L. c. 40F, § 4; both the
Finance Corporation and community development corporations may
use funds for public purposes only, and the community development
corporation to which the Commonwealth's credit is extended is not
a "private association" or a "corporation which is privately owned
and managed" within art. 62, § 1. [909-911]

On October 18, 1977, the Justices submitted the follow-
ing answers to questions propounded to them by the Gov-
ernor.

To His Excellency, the Governor of the Commonwealth:

The Justices of the Supreme Judicial Court respectfully
submit their answers to the questions set forth in the re-
quest of the Governor, dated August 16, 1977, and received
August 17, 1977, for their opinion concerning the constitu-

tionality of the financing of certain community development projects as set forth in G. L. c. 40F, inserted by St. 1975, c. 866, § 2.

The request recites that G. L. c. 40F, § 4, permits the State Treasurer to sell up to $10,000,000 in Commonwealth bonds to purchase shares of the Massachusetts Community Development Finance Corporation (CDFC) and that the bonding was authorized by St. 1976, c. 481, § 15. Under that bonding authorization, the Governor may request the State Treasurer to issue and sell up to $10,000,000 of Commonwealth bonds, and he must approve the interest on those bonds. The request further recites that the Governor has responsibilities to approve any such bonds under G. L. c. 29. See G. L. c. 29, § 48, as appearing in St. 1977, c. 336, § 2, and § 49, as amended through St. 1977, c. 336, § 4. Chapter 40F establishes CDFC and empowers it to use the proceeds of the sale of its common stock to invest in projects which meet detailed standards set forth in G. L. c. 40F, § 4.

The Governor's request expresses grave doubt that bonds issued to purchase all the common stock of CDFC would be "issued for a public purpose and not on behalf of a private party." The Governor has requested our opinions on the following two questions:

> "1. Is the Community Development Finance Corporation, created pursuant to M.G.L. c. 40F, established primarily for a valid public purpose for which public funds can be expended consistent with Part 2, Article 4, c. 1, § 1, of the Massachusetts Constitution?
>
> "2. If the answer to Question 1 is in the affirmative, then can the Commonwealth, consistent with Amendment Article 62, § 1, of the Massachusetts Constitution, borrow funds and purchase all of the capital stock of the Community Development Finance Corporation, which funds thereafter are to be invested by such Corporation, all as provided in M.G.L. c. 40F?"

We invited the submission of briefs and received a brief on behalf of the Governor and a brief from individual at-

torneys in a firm which has been requested from time to time to give its opinion as to the validity of bonds issued by the Commonwealth.

The questions have been put to us in light of the Governor's duties with respect to the issuance of bonds whose proceeds will be used to purchase the common stock of CDFC. Those proceeds will be invested by CDFC under the particular restrictions of G. L. c. 40F, § 4. Only the question of the propriety of the sale of the bonds presents a solemn occasion warranting an advisory opinion. See *Answer of the Justices*, 364 Mass. 838, 844 (1973); *Opinion of the Justices*, 363 Mass. 889, 898 (1973); *Opinion of the Justices*, 359 Mass. 769 (1971). Consequently, we answer the questions solely in terms of the problem which now confronts the Governor.

1. Question 1 inquires whether the expenditure of public funds for the purposes of CDFC is constitutionally proper. As just noted, this broad question need be answered only as it relates to the proceeds of the sale of Commonwealth bonds. We must consider (a) whether the objects of G. L. c. 40F and the goals of CDFC fulfil a public purpose, and (b), if there are benefits to private parties, whether those benefits are merely incidental to the achievement of the public purpose. *Opinion of the Justices*, 368 Mass. 880, 885 (1975).

Chapter 40F was inserted in the General Laws by § 2 of St. 1975, c. 866. Section 1 of St. 1975, c. 866, contains legislative findings of substandard, decadent, or blighted areas in the Commonwealth, unemployment and underemployment aggravated by an unacceptably low level of economic activity in such areas, the need for substantial funds for the development of such areas, and the unavailability of private capital adequate to deal effectively with these problems. Section 1 further declares "that increasing the number of development projects in decadent, substandard and blighted areas, providing capital to community development corporations and small businesses within such areas, and stimulating private investment in such businesses and areas are public uses and purposes for which

public money may be expended and invested." Such legislative findings are entitled to weight in any judicial assessment of whether the expenditure of public money is for a public purpose. *Opinion of the Justices*, 337 Mass. 777, 781 (1958), and cases cited.

The declared purposes of St. 1975, c. 866, are public in character. Reducing unemployment and stimulating the economy are public purposes. *Opinion of the Justices*, 368 Mass. 880, 885-886 (1975). See art. 88 of the Amendments to the Constitution of the Commonwealth, approved in 1966, declaring that industrial development is a public function; *Opinion of the Justices, ante*, 873, 876 (1977). It has been established beyond question that public purposes for the expenditure of funds include the elimination of substandard areas (*Allydonn Realty Corp.* v. *Holyoke Hous. Auth.*, 304 Mass. 288, 293-294 [1939]), and the redevelopment of "substandard," "decadent" or "blighted open areas" (*Opinion of the Justices*, 334 Mass. 760, 763 [1956]; *Papadinis* v. *Somerville*, 331 Mass. 627, 631-632 [1954]), whether the proposed project involves residential, commercial, or industrial uses (*Massachusetts Hous. Fin. Agency* v. *New England Merchants Nat'l Bank*, 356 Mass. 202, 210-211 [1969]; *Dodge* v. *Prudential Ins. Co.*, 343 Mass. 375, 383 [1961]; *Opinion of the Justices*, 341 Mass. 760, 776-777 [1960]). We have no doubt that, if fairly arrived at, the findings which CDFC's directors must make concerning each project and any "target area" will assure that the funds invested by CDFC will be devoted to public purposes. See G. L. c. 40F, § 4.

Other findings which the directors of CDFC must make will assure that whatever benefits may accrue to private parties from the investment of funds by CDFC will be merely incidental to public purposes. *Opinion of the Justices*, 368 Mass. 880, 885-886 (1975), and cases cited. By requiring these findings, as set forth in G. L. c. 40F, § 4, the Legislature adequately ensured that the funds invested by CDFC would be expended primarily to confer direct public benefits, and that any private advantage would be reasonably incidental to carrying out the public

purpose. *Id.* at 886. Section 4 of G. L. c. 40F provides that the proceeds of the sale of CDFC's common stock must be held separate from other funds. Apart from their investment in securities and other obligations eligible for the investment of certain State funds (G. L. c. 29, § 38),[1] the proceeds may be used only to purchase capital participation instruments from community development corporations in return for an investment in a specific project approved by CDFC's board of directors. In approving a project, CDFC's board of directors must make specific findings, including determinations that a specific project (a) "will increase or maintain threatened primary employment" (G. L. c. 40F, § 4, fifth par. [1]), or may reasonably be expected to contribute to the redevelopment of the target area and to the economic development of the Commonwealth, (b) will be of public benefit and for a public purpose,[2] and (c) lacks funding in the traditional

---

[1] The fourth paragraph of § 4 of G. L. c. 40F, which restricts CDFC's use of the proceeds of the sale of its common stock, reads as follows: "The corporation shall hold the proceeds of said investment in an account or accounts separate from other funds. The corporation shall use said proceeds for only two purposes: (1) to purchase capital participation instruments from community development corporations in return for an investment in a specific project only when the board of the CDFC finds that community development corporation will use the funds in support of a project consistent with the purposes of this chapter and (2) to invest said funds in any security eligible for investment under the provisions of section thirty-eight of chapter twenty-nine. Proceeds of these investments may be used to pay for the normal business expenses of the CDFC."

The last sentence of the quoted paragraph indicates that, if any portion of the proceeds of the sale of CDFC's common stock is invested and produces income, that income may be used for CDFC's normal business expenses. We have not been asked to opine on this provision; neither of the briefs makes a point of it. It appears, but with less than total clarity, that none of this investment income may be used to support the limited small business investment corporation which CDFC is authorized to establish. G. L. c. 40F, § 5, third par. (2). We have no indication that, in any other respect, the "normal business expenses" of CDFC might not involve a proper public purpose.

[2] In assessing whether a particular project is for a public purpose, the directors of CDFC will have to satisfy themselves that any private benefit which may derive from the project will be incidental to a primary public purpose.

capital markets or has been offered credit on terms that would preclude the success of the project. The directors of CDFC must further find that the community development corporation meets certain specific requirements, including (a) public membership, and election of a majority of its board of directors by the full membership (G. L. c. 40F, §§ 1, 4 [7]), and (b) sufficient control over the conduct of the project to ensure that "public benefit and public purposes are maintained" (G. L. c. 40F, § 4 [11]).

We answer question 1, "Yes."

2. Question 2 asks whether the procedure by which the Commonwealth would borrow funds and purchase all of the common stock of CDFC and by which CDFC would then invest the stock proceeds as permitted by G. L. c. 40F involves an unconstitutional lending of the credit of the Commonwealth. Article 62, § 1, of the Amendments to the Constitution, as appearing in art. 84, provides, "The credit of the commonwealth shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed."

The Commonwealth's payment of cash for the stock of CDFC would not itself be a loan of credit because in such an arrangement "the Commonwealth would not lend its funds or credit to... [CDFC] or guarantee or insure the latter's obligations." *Opinion of the Justices*, 337 Mass. 800, 808 (1958). However, the substance of the entire statutory plan must be analyzed in answering the question whether there is a loan of the Commonwealth's credit. *Opinion of the Justices*, 359 Mass. 769, 773 (1971). *Ayer* v. *Commissioner of Administration*, 340 Mass. 586, 592-593, 598 (1960). The funds borrowed by the State will be acquired by CDFC in exchange for all of its common stock and will thereafter be loaned, or otherwise made available, to community development corporations. In *Opinion of the Justices*, 359 Mass. 769, 773 (1971), the Justices said that "[t]he two steps of (a) borrowing by the State and (b) lending of the borrowed cash to a private borrower, would have essentially the same effect as a State guaranty of a

loan to the ultimate borrower," which is a lending of credit. See *Opinion of the Justices*, 322 Mass. 745, 751 (1948). We think that the addition of intermediate steps in the transfer of funds borrowed by the State, first to CDFC and ultimately to community development corporations, does not change the essential character of the transactions as State guaranties of loans to ultimate borrowers. Thus, the answer to question 2 turns, not on whether the Commonwealth's credit is extended, but on whether a community development corporation is, in the words of art. 62, § 1, a "private association" or a "corporation which is privately owned and managed."

We think that a community development corporation which expends funds in accordance with the conditions and limitations of G. L. c. 40F, § 4, is not a private borrower and that, therefore, the statutory pattern of G. L. c. 40F does not involve an unconstitutional lending of the credit of the Commonwealth. What we have said already concerning the use of the funds acquired by CDFC from the sale of its stock applies here as well and demonstrates that CDFC and community development corporations may use those funds for public purposes only. Consequently, the Commonwealth's credit is not being extended to a corporation which is privately owned and managed. CDFC will be publicly owned and will be managed publicly for a public purpose. The proceeds of the sale of CDFC's common stock may be used only for specific, approved projects of public benefit and public purpose, and only by a community development corporation which, in turn, meets certain criteria designed to ensure the public nature and purpose of the use of the funds. G. L. c. 40F, § 4. No aid is to be given or lent by the Commonwealth to any private person or entity. If any such person or entity should happen to derive benefit from such a project, that benefit will be "indirect and incidental and not the purpose of the statute. *Allydonn Realty Corp.* v. *Holyoke Housing Authy.*, 304 Mass. 288 [1939]. *Opinion of the Justices*, 322 Mass. 745, 751 [1948]." *Massachusetts Bay*

*Transp. Auth.* v. *Boston Safe Deposit & Trust Co.,* 348 Mass. 538, 558 (1965).

We answer question 2, "Yes."

The foregoing answers and opinions are submitted by the Chief Justice and the Associate Justices subscribing hereto on the eighteenth day of October, 1977.

> EDWARD F. HENNESSEY
> FRANCIS J. QUIRICO
> ROBERT BRAUCHER
> BENJAMIN KAPLAN
> HERBERT P. WILKINS
> PAUL J. LIACOS
> RUTH I. ABRAMS