Quinlan, J.
The plaintiff, Massachusetts Refusetech, Inc. (“MRI”) has filed this contract action seeking inter alia a declaratory judgment that the defendant, Northeast Solid Waste Committee (“NESWC”)[1] is responsible for certain costs under a contract. The matter is now before this court on MRI’s motion for partial summary judgment regarding the same. For the following reasons, the motion is DENIED.
BACKGROUND
In the 1970s, through the efforts of the Commonwealth of Massachusetts Bureau of Solid Waste Disposal (the “Bureau”), negotiations began between NESWC and Universal Oil Products, Inc. (“UOP”), MRI’s predecessor, regarding construction and operation of a resource recovery facility (the “Facility”). The purpose of the Facility was to provide a low. cost and an efficient alternative method of disposing the Member Communities’ waste. In 1981, NESWC and MRI entered into a contract (the “Service Agreement”), the scope of which is the subject of this dispute. Under the Service Agreement, MRI owns and operates the Facility which provides a solid waste disposal site for the Member Communities, converting that waste to energy. The Service Agreement expires in 2005, at which time MRI will still own the Facility, but neither party will have any further obligations to one another.
The dispute arises out of an amendment to the Clean Air Act of 1990 that imposes increased air pollution control requirements on waste-to-energy plants, including the Facility. Those requirements necessitate the installation of additional air pollution control equipment (the “Retrofit”) into the Facility prior to December 19, 2000. For the purpose of this motion the parties have agreed that the total cost of the Retrofit to be approximately $48.99 million. The Retrofit has a useful life of 20 to 25 years.
According to the Service Agreement, NESWC has to pay for alterations and additions to the Facility that are required by changes in the law. See Section VII of the Service Agreement. MRI seeks summary judgment that, based on the language in the Service Agreement, this court declare that NESWC pay the entire cost of constructing the Retrofit, the cost being $48.99 million. While NESWC does not dispute that the Retrofit is a required change to the Facility within Section VII of the Service Agreement, they dispute MRI’s position that NESWC is responsible for the entire cost without taking into account the value that MRI will receive from the Retrofit after the year 2005.
DISCUSSION
This court grants summary judgment where the pleadings, depositions, answers to interrogatories and admissions on file show no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.R 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
*786 “[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he [or she] demonstrates by reference to material described in Mass.R.Civ.P. 560 that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Smith v. Massimiano, 414 Mass. 81, 86 (1993); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Interpretation of the Service Agreement.
Section VII(l) of the Service Agreement provides that the NESWC/Member Communities are responsible for
the amortization of the total cost, includingfinance costs, for the design and construction of, and any additional operation and maintenance costs resulting from any change to the Facility or change in the method of operation, which is required by or results from:
(iv) an Uncontrollable Circumstance.
For the purpose of this Section, “costs” shall include all items which were treated as “costs” with respect to the original cost of construction of the Facility, and shall include escalation and financing costs.
(Emphasis added).
The language in the Service Agreement is clear and unambiguous that NESWC will be responsible for the total cost of the Retrofit. NESWC avers that “cost” in Section VII(l) means “costs” that were contemplated at the time of the original construction of the Facility. An affidavit from Ahti E. Autio, one of the original negotiators of the Service Agreement, states that “it was never intended that MRI would reap extraordinary profit from a change in the law at the expense of the NESWC Communities.” Autio Aff. ¶24. The definition of “cost” in Section VII is an inclusive one and a mere clarification that “cost” would include items that were covered during the original construction of the Facility. Also, absent any suggestion from NESWC that the Service Agreement was not a fully integrated document, this court is bound by the unambiguous term “total cost” in the Service Agreement. See Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997). See also Lording Studios of Massachusetts, Inc. v. Schist, 10 Mass.App.Ct. 864, 865 (1980).
On interpreting the language of the Service Agreement, this court concludes that NESWC contracted to pay the total cost of additions and alterations required by changes in the law, i.e., $48.99 million, without pro-rating the cost with MRI.
II. Public Policy and Massachusetts Constitution.
“It is a fundamental principle of constitutional law frequently declared that money raised by taxation can be used only for public purposes and not for the advantage of private individuals.” Opinion of Justices, 368 Mass. 880, 885 (1975) (citations omitted). In examining the constitutionality of an expenditure using public monies in an activity where there may be benefits to private parties, the crucial inquiry is whether the private benefits are primary or merely incidental to the achievement of the public purpose. Cf. Opinion of Justices, 368 Mass at 885. In making this inquiry, a court must consider inter alia the following factors: Whether the benefit is available on equal terms to the entire public in the locality affected; whether the service or commodity supplied is one needed by all or by a large number of the public; whether the enterprise bears directly and immediately, or only remotely and circumstantially, upon the public welfare; whether, in so far as benefits accrue to individuals, the whole of society has an interest in having those individuals benefited. Allydonn Realty Corporation v. Holyoke Housing Authority, 304 Mass. 288, 293 (1939).
In the present case, the above factors and the summary judgment record reveals that the benefit from the Retrofit, at least till the Service Agreement terminates in 2005, is primarily conferred on the Member Communities. During this period,[2] the benefit to MRI is only incidental. However, after the Service Agreement terminates, MRI will become the primary beneficiary of the Retrofit, with only incidental benefits, if any, to the Member Communities. This Court declares that so much of the Service Agreement that requires payment of the Member Communities’ public money for MRI’s private benefit which is incidental to the public benefit is unenforceable since it violates the Constitution and public policy.
In light of the above, the cost of the Retrofit must be allocated between the Member Communities and MRI. An allocation is a question of fact that requires an evidentiary hearing. Such a determination is beyond the scope of this summary judgment.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Plaintiff s Motion for Partial Summary Judgment Regarding Payment for Alterations and Additions Required for Compliance with the 1990 Amendments to the Clean Air Act is DENIED.

The NESWC member communities are: Acton, Andover, Arlington, Bedford, Boxborough, Burlington, Carlisle, Dracut, Hamilton, Lexington, Lincoln, Manchester- — by-the— Sea, North Andover, North Reading, Peabody, Tewksbury, Watertown, Wenham, Westford, West Newbuiy, Wilmington and Winchester (the “Member Communities”).

Period between installation of the Retrofit and termination of the Service Agreement.